J. CURTIS EDMONDSON (SBN 236105)
Law Offices of J. Curtis Edmondson
Beaverton Plaza Building
3720 SW 141st Avenue, Suite 212
Beaverton, OR 97005
Phone: (503) 336-3749
Email: jcedmondson@edmolaw.com

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IVO TANKU TAPANG,<br>              Plaintiff,<br>v.<br>EMMANUEL NSAHLAI<br>            Defendant | Case No.:<br><br>**COMPLAINT FOR DEFAMATION AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ivo Tanku Tapang ("Plaintiff") alleges as follows:

## INTRODUCTION

1.      This case is about a member of the California State Bar, Emmanuel K. Nsahlai ("Nsahlai"), SBN 207588, authoring in 2025 a libelous and defamatory asserting that Ivo Tanku Tapang ("Tapang") is a terrorist. (Ex.1).  Nsahlai's letter, then immediately distributed via "press release" falsely claims that Nsahlai has some sort of close working relationship with a redacted DOJ official. (Ex. 2 and 3). This is despite three earlier cases finding exactly the opposite - with the courts' imposing sanctions on attorney Nsahlai. (Ex. 4 and 5).  Despite court prior sanctions, Nsahlai presses on with his scurrilous untruths about Tapang.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**          **Page 1**

## THE PARTIES

2.  At all times herein, Tapang is an individual residing in the State of Texas.  Tapang has a PhD, is employed professionally, and provides for his family. He is a member of the Cameroonian Diaspora, having emigrated to the United States due the ongoing civil war in the Cameroons.

3.  At all times herein, Defendant Nsahlai is an individual who is believed to be domiciled and residing in Los Angeles, California.  Defendant practices law at Nsahlai Law ("Firm") located at the address of 11755 Wilshire Blvd., Suite 1250, Los Angeles, CA 90025.    Nsahlai's Firm's website is: www.nsahlaifirm.com.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over Nsahlai pursuant to diversity under 28 U.S.C. § 1332. The claimed damages reasonably exceed $ 75,000.00 due to future lost earnings for the publication of defamatory statements, general damages, and punitive damages.

5.  This Court has personal jurisdiction over Nsahlai because the defamatory statements made by Nsahlai were published in Los Angeles County. Nsahlai operates his law firm in Los Angeles County, California.

6.  Venue is proper in this judicial district as the underlying conduct which serves as a basis of this lawsuit, the location of Nsahlai and his law firm are in the Los Angeles County area.

## FACTUAL ALLEGATIONS

7.  Nsahlai is a Cameroonian who practices law in California and also in the Cameroons.

8.  Tapang is a political refugee of the Cameroons, who moved to the United States.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**        **Page 2**

9.    On or about January 2025, Nsahlai published a letter stating that Tapang "…Committed immigration fraud by concealing their crimes against humanity and terrorism….". (Ex. 1).

10.    Nsahlai states that he has had a long collaboration with the DHS and DOJ, implying that he is some sort of "special agent" for the United States government.  The purpose of such implications is that Nsahlai's statements against Tapang are indisputable, when, in fact, they are false.

11.    Attorney Nsahlai directly or via agents immediately distributed this letter to various news outlets with the specific intent of harming Tapang in his profession and ideally deported. One such publication is on Facebook (Ex.  2) and The Sun (Ex. 3).

12.    This is not Nsahlai's first public attack on Tapang in the federal courts involving claims of fabricated Doe plaintiffs.  In *Doe vs. Tapang*, attorney Nsahlai falsely alleged that Tapang's actions resulted in a death of two individuals.  *Doe vs. Tapang*, (CAND 2018) 5:18-cv-07221, (Dckt 1, 12/26/18).

13.    The Hon. Nathaniel Cousins subsequently sanctioned Nsahlai the sum of $5,567.25 and dismissed the case with prejudice. *Id*. at Dckt 106 (1/28/2020). (Ex. 4).  Notably the Hon Nathanial Cousin's ruled:

> *"...* The Court finds that Mr. Nsahlai exhibited subjective bad faith in his refusal to participate in discovery [refusing to identify who was his 'John Doe' client] while expending both the defendant's and the Court's time by prolonging the litigation—through, for instance, filing a third temporary restraining order—rather than voluntarily dismissing the case". *Id.* at 7

14.    Having failed in the Bay Area, Nsahlai headed south. Nsahlai's second public attack on Tapang in the federal courts falsely claimed that Tapang "instructed armed groups". *Cameroon Association of Victims of Ambazonian Terrorism Inc* (CAVAT), *vs. Ambazonian Foundation Inc. et. al.* (CACD 2020) 2:20-cv-1115-JFW-AS (Dckt 2, 2/5/2020). Nsahlai was subsequently sanctioned in the sum of $ 2,730.00. (Ex 5.) CAVAT was organized as a charity by Nsahlai (Ex. 6) with no corresponding required registration in the California Registry of Charities.

15.    Another case, where Nsahlai represented a purported "victim" of Tapang, resulted in a two-day trial in Los Angeles Superior Court, with the court ruling completely in Tapang's favor.

## CLAIM FOR RELIEF
## COUNT 1 - DEFAMATION

16.    Tapang incorporates by reference the prior paragraphs.

17.    Nsahlai published on social media, or caused his agents to publish, a letter on or about January 2025 claiming, directly or by implication, that Tapang is a terrorist. Nsahlai directly stated or implied that he cooperates closely with "DHS and DOJ".

18.    Nsahlai understood that the letter was about Tapang as he expressly identified him in the letter.

19.    Nsahlai understood that these statements in the letter made concerning Tapang were false. There is no evidence Tapang committed immigration fraud (a crime) or terrorism (also a crime).

20.    Nsahlai failed to use reasonable care in determining the truth or falsity of the statements

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF          Page 4**

21.    Nsahlai's past pattern of failed and fraudulent lawsuits on behalf of sham persons and entities indicates a level of wantonness and vindictiveness.

### JURY TRIAL DEMAND

22.    Tapang hereby demands a trial by jury.

### PRAYER FOR RELIEF

A. For Actual Damages  due to damage to Tapang's trade and profession but no less than $ 100,000.00;

B. Expenses for remedial marketing and curative publications;

C. Harm to Tapang's reputation in an amount no less than $ 100,000.00;

D. Assumed damages;

E. Punitive damages in an amount to be determined by the court; and

F. A declaration that Attorney Nsahlai is a vexatious litigant and enjoining him from making further communications about Tapang to a federal agency without prior court approval.

Law Offices of J. Curtis Edmondson


*/s/ J. Curtis Edmondson*
J. Curtis Edmondson, SBN #236105
Attorney for
Plaintiff Ivo Tanku Tapang

# EX. 1

## NSAHLAI'S JANUARY 2025 LETTER



# NSAHLAI LAW FIRM
## An International Law firm

11755 Wilshire Blvd Suite 1250
Los Angeles, CA 90025
Web: www.nsahlailawfirm.com

**Phone :** + 001 (213) 797- 0369
**Fax :**      + 001 (213) 973 - 4617
**E-mail :** nsahlai.e@nsahlailawfirm.com
Phone Cam : + (237) 65909 - 0688

January ██, 2025

**Special Agent** ████████
Department of Homeland Security
**National** ████████████████████
Office of ████████████████
U.S. Immigration and Customs Enforcement

*Via Email to:* ██████ , ████████ @ice.dhs.gov

**Subject:** Request for Enforcement of New Trump Administration Immigration Policies Against Ambazonia Separatists

Dear Special Agent ████████ ,

I hope this message finds you well. I am writing to request that the Department of Homeland Security enforce the new Trump administration immigration policies targeting individuals who have violated U.S. immigration and anti-terrorism laws. Specifically, I urge DHS to prioritize the revocation of legal permanent residence (LPR) and citizenship for members of the Ambazonia separatist movement who have engaged in terrorism, immigration fraud, and other disqualifying activities.

As you know, I have been working closely with DHS and DOJ officials, including yourself, for the past several years on cases related to the Ambazonia separatist movement. Since our initial meetings in Los Angeles and Washington, D.C., in 2019 and 2020, we have collaborated extensively to gather intelligence and evidence against these individuals, many of whom have sought to exploit U.S. immigration laws while continuing to incite violence and terror abroad. Your intimate knowledge of their crimes, supported by evidence provided during those meetings, subsequent criminal reports and legal memorandums, current criminal pending cases, and so on and forth, underscores the need for swift action.

### Legal Basis for Action
Under U.S. law:

1. **INA Section 237(a)(4)(B):** Legal permanent residents involved in terrorist activities, including material support of terrorism or membership in violent organizations, are deportable.

**NSAHLAI LAW FIRM**
An International Law firm

11755 Wilshire Blvd Suite 1250
Los Angeles, CA 90025
Web: www.nsahlailawfirm.com

Phone :  + 001 (213) 797- 0369
Fax :    + 001 (213) 973 - 4617
E-mail :   nsahlai.e@nsahlailawfirm.com
Phone Cam : + (237) 65909 - 0688

2. **INA Section 212(a)(3)(B):** This section retroactively renders individuals inadmissible for material support of terrorism, whether the activities occurred before or after obtaining their immigration status.

3. **INA Section 340(a):** Naturalized citizens can be denaturalized if their citizenship was procured through fraud or concealment of material facts, such as involvement in terrorism or violent organizations.

4.

The Trump administration's immigration policies emphasize national security and the removal of individuals involved in terrorism or criminal activities. These policies provide an essential framework for addressing the threat posed by Ambazonia separatists who reside in the U.S. and continue to engage in material support of terrorism.

### Ambazonia Separatists Fit Trump Administration Priorities

The Ambazonia separatist movement and its members are the prime example of the type of immigrants that the Trump administration seeks to target and deport. These individuals have committed immigration fraud, violated anti-terrorism laws, and engaged in crimes against humanity, including killing school children. Targeting this group not only aligns with but exceeds the requirements and priorities outlined by the administration to protect national security and enforce immigration laws. Additionally, prosecuting and removing these individuals fulfills all the factors necessary for robust Federal prosecutions, demonstrating the government's commitment to safeguarding U.S. interests.

### Specific Individuals of Concern

Prominent members of the Ambazonia movement, including Tapang Ivo Tanku, Eric Tano Tataw, and John Mbah Akuro, Christopher Anu Fobeneh, Samuel Sako Ikome, and others in the attached list, have used their positions to incite violence, solicit funds for terrorist activities, and recruit supporters. Many of these individuals:

- Have pending asylum applications or have been denied asylum and are appealing.
- Have committed immigration fraud by concealing their involvement in crimes against humanity and terrorism under **INA Section 212(a)(6)(C)** (fraud and misrepresentation).

### Request for Action

I respectfully request the following actions:

1. **Expedited Review of Asylum Applications:** Ensure asylum applications from Ambazonia separatists are reviewed under enhanced vetting procedures, with a focus on their alleged support for terrorism.

2. **Revocation of Immigration Status:** Revoke the green cards and citizenship of individuals found to have violated U.S. laws, particularly those engaged in terrorism or fraud.

3. **Deportation Proceedings:** Prioritize deportation for those whose asylum applications have been denied or who are found inadmissible under U.S. law.

**NLF**

# NSAHLAI LAW FIRM
An International Law firm

11755 Wilshire Blvd Suite 1250
Los Angeles, CA 90025
Web: www.nsahlailawfirm.com

Phone :  + 001 (213) 797- 0369
Fax :      + 001 (213) 973 - 4617
E-mail :   nsahlai.e@nsahlailawfirm.com
Phone Cam : + (237) 65909 - 0688

**Additional Context**

The actions of these individuals undermine the integrity of the U.S. immigration system. Their crimes, including incitement to violence and material support of terrorism, have caused untold harm to innocent civilians. These individuals exploit the asylum system to evade accountability while continuing their operations abroad.

Attached to this letter is a partial list of hundreds of Ambazonia separatists who have engaged in immigration fraud and support for terrorism. I respectfully request that this letter be escalated to your supervisors and relevant departments to ensure prompt action.

Thank you for your attention to this urgent matter. I remain available to provide additional evidence or assist in any way necessary to support these cases.

Very Truly Yours,
**NSAHLAI LAW FIRM**
**/s/**
*Emmanuel  Nsahlai*
nsahlai.e@nsahlailawfirm.com

*Enclosures:*

Partial List of "Ambazonia" USA resident separatists Engaged in Immigration Fraud and Terrorism Activities

**11755 Wilshire Blvd Suite 1250**
**Los Angeles, CA 90025**
**Web: www.nsahlailawfirm.com**

**Phone :   + 001 (213) 797- 0369**
**Fax :     + 001 (213) 973 - 4617**
**E-mail :   nsahlai.e@nsahlailawfirm.com**
Phone Cam : + (237) 65909 - 0688

NSAHLAI LAW FIRM
An International Law firm

**MEMORANDUM**

**PART. I**

**LIST OF SEPARATISTS-TERRORISTS "AMBAZONIA" ORGANIZATIONS AND THEIR KEY MEMBERS RESIDING IN THE U.SA.**

Based on extensive research conducted by the Nsahlai Law Firm, the following is a list of organizations and their founders, officers, and directors who have conspired, aided, and abetted acts of immigration fraud, international terrorism, human rights violations, and violent crimes. These individuals and groups established NGOs to defraud Americans of millions of dollars under the guise of "humanitarian causes." In reality, these funds were funneled to support armed insurgency and international terrorism activities.

This is substantiated by the conviction of nearly twenty high-ranking members of these organizations. Examples include **United States v. Michael (Case 1:19-mj-02413)**, **United States v. Edith Ngang (Case 1:21-cr-00195)**, and **United States v. Alambi Walters (Case 1:21-cr-00194)**, and over 15 other related cases.

In other instances, prominent members remain detained without bail, pending trial, on charges of "material support of terrorism." For example, see **Case 4:22-cr-00261-RK** and related cases in the U.S. District Court for the Western District of Missouri, where individuals have been held for over two years.

This list underscores the urgent need for strict enforcement of President Trump's immigration Executive Orders targeting undocumented, criminal, or otherwise ineligible immigrants, for deportation and revocation of status.

**1. AMBAZONIA FOUNDATION INC.:**
Founders, Officers, and Directors of Ambazonia Foundation Inc.

a. BLAISE CHE
b. VICTORINE YANGNI
c. IRENE NGWA
d. EYEMBE ELANGO
e. RICHARD TANGU
f. HELEN AKONJI
g. RESTUS NDEH
h. PATIENCE ABIEDU

**2. AMBAZONIA BROADCASTING CORPORATION –AMBA ABC INCORPORATED**

11755 Wilshire Blvd Suite 1250
Los Angeles, CA 90025
Web: www.nsahlailawfirm.com

Phone :  + 001 (213) 797- 0369
Fax :      + 001 (213) 973 - 4617
E-mail :  nsahlai.e@nsahlailawfirm.com
Phone Cam : + (237) 65909 - 0688

# NSAHLAI LAW FIRM
## An International Law firm

Founders, Officers, and Directors of Ambazonia Broadcasting Corporation

a. SEBASTAIN MBARIKU
b. GEORGE FON
c. HENRY MOKUBE
d. MATTHEW ATUGON

## 3. AMBAZONIA RELIEF FUND INC.
Founders, Officers, and Directors of Ambazonia Relief Fund Inc.

a. EBENEZER M. AKWANGA
b. JOHN MBAH AKUROH
c. ELVIS KOMETA

## 4. AMBAZONIA RECOGNITION COLLABORATIVE COUNCIL ( ARCC ) INC.
Founders, Officers, and Directors of Ambazonia Recognition Collaborative Council Inc.

a. JUDE AMBE
b. BOH HERBERT
c. LAMBERT MBOM
d. JUDE OZUGHEN

## 5. AMBAZONIA CONSULTING INC.
Founders, Officers, and Directors of Ambazonia Consulting Inc.

a. SAMUEL IKOME SAKO
b. TABENYANG ETCHU
c. PETER AKO
d. JOHN TALIEH
e. STANLEY TABI
f. KWANGA CORNELIUS

## 6. SOUTHERN CAMEROON RELIEF FUND LTD
Founders, Officers, and Directors of Southern Cameroon Relief Fund Ltd

a. CHRISTENSIA ASONG
b. ERIC TATAW
c. PRINCE J. CARL



**11755 Wilshire Blvd Suite 1250**
**Los Angeles, CA 90025**
Web: www.nsahlailawfirm.com

**Phone :  + 001 (213) 797- 0369**
**Fax :       + 001 (213) 973 - 4617**
**E-mail :  nsahlai.e@nsahlailawfirm.com**
Phone Cam : + (237) 65909 - 0688

## PART II

LIST OF OTHER KEY SEPARATISTS WITHIN THE U.S.A. WHO HAVE COMMITTED IMMIGRATION FRAUD, CONSPIRACY TO INTERNATIONAL TERRORISM AND HUMAN RIGHTS VIOLATION

1. GRACE ADJEILI ; Country – USA
2.  BENEDICT KUAH; Country – USA
3. CHRISTOPHER ANU FOBENEH A.K.A CHRIS ANU; Country – USA
4. FRANKLIN N. VERLA; Country – USA
5. DANIEL A. ESOE; Country – USA
6. CHRISTENSIA AKUNJU ASONG; Country – USA
7. ███████████████; Country – USA
8. WALBURGA N. NDONG; Country – USA
9. Christmas Ebini,
10. Hariscine Abongwa,
11. Leo Chem,
12. Kizito Elad,
13. Ekomenzoge Metuge,
14. John Egyawan,
15. Martin Ayim,
16. Walter Fondon,
17. Sylvester Zama,
18. Confort Konfor,
19. Banseka Kikishy Pascal
20. Njowo Clement
21. Anu Chris, Mbeseha
22. R. Fondi
23. Tezock Emma
24. Tabeyang Brado
25. Fusi Theo
26. Emmanuel Tita
27. Zama Isaac
28. Atianjoh, Tenjeh
29. Ngwa, Munji Atungon
30. Ngwa Celestine
31. Atugon Mbariku
32. Tata Konfor
33. Paul Yunwa
34. Shey Jones

NSAHLAI LAW FIRM
An International Law firm

11755 Wilshire Blvd Suite 1250
Los Angeles, CA 90025
Web: www.nsahlailawfirm.com

Phone :  + 001 (213) 797- 0369
Fax :      + 001 (213) 973 - 4617
E-mail :   nsahlai.e@nsahlailawfirm.com
Phone Cam : + (237) 65909 - 0688



# EX. 2

# CAND SANCTIONS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE and JANE DOE,

Plaintiffs,

v.

IVO TANKU TAPANG,

Defendant.

Case No. 18-cv-07721-NC

**ORDER DISMISSING CASE WITH PREJUDICE; AWARDING ATTORNEY'S FEES; DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT**

Re: Dkt. Nos. 85, 96

Before the Court are motions for dismissal of this case under Federal Rule of Civil Procedure 41 and for attorney's fees. Dkt. Nos. 96, 97, 99, 101. After a series of discovery disputes, motions to compel, and the plaintiffs' expressed interest in dismissing their case without prejudice, the Court invited the parties to brief the questions of (1) whether dismissal under Rule 41(a)(2) or 41(b) is proper; (2) whether dismissal should be adjudication on the merits; and (3) whether plaintiffs should be required to pay defendants' costs. Dkt. No. 94. The Court finds that dismissal with prejudice under Rule 41(b) is appropriate here where the plaintiffs' failure to produce discovery and to prosecute the case has prejudiced the defendant, particularly after the Court has already ruled on multiple motions to dismiss and motions for temporary restraining orders earlier in the case. Therefore, the Court GRANTS the motion to dismiss with prejudice under Rule 41(b) and AWARDS defendant $5,567.25 in related fees against plaintiffs' counsel.

## I.    Background

Plaintiffs John Doe and Jane Doe filed this case in December 2018 seeking damages for wrongful death, RICO conspiracy, and terrorism-related claims against defendant Ivo Tanku Tapang.  Dkt. No. 1.  Plaintiffs allege that Tapang is an international terrorist who directed the killings of their family members in Cameroon.  *Id.*  The Court granted the plaintiffs' motion to proceed pseudonymously based on plaintiffs' cited fear for their physical safety in light of their allegations against Tapang.  Dkt. Nos. 4, 6.  In their motion to litigate under pseudonym, Plaintiffs agreed to disclose their identities to Tapang's attorney under an "Attorney's Eyes Only" protective order provision.  Dkt. No. 4 at 5.

Plaintiffs filed a motion for a temporary restraining order, which the Court denied.  Dkt. Nos. 16, 31.  Tapang filed a motion to dismiss, and the Court granted the motion and gave Plaintiffs leave to amend their complaint.  Dkt. Nos. 32, 40.  Tapang moved to dismiss the amended complaint, and the Court granted the motion as to all but two claims in the amended complaint.  Dkt. Nos. 41, 52.  Plaintiffs moved for a second temporary restraining order, which the Court again denied.  Dkt. Nos. 48, 59.  The Court set a deadline of October 11, 2019, for the parties to file a protective order to govern this case.  Dkt. No. 62.  Plaintiffs did not move for a protective order.

In September 2019, Tapang filed motions to compel plaintiffs' production of initial disclosures, to compel the deposition of Jane Doe, and for a protective order.  Dkt. Nos. 66, 68, 70.  The Court set a hearing on the discovery issues and ordered the plaintiffs to show cause why they had failed to prosecute the case and had failed to comply with the rules and orders of the Court.  Dkt. Nos. 69, 74.  Specifically, the Court was concerned that the plaintiffs had not responded to Tapang's requests to set a date for the deposition of Jane Doe.  *Id.*

Plaintiffs' counsel was then unresponsive to contact from Tapang and the Court.  Dkt. No. 75.  Plaintiffs' counsel did not respond to the order to show cause and did not appear at the hearing on the order.  *Id.*  The Court issued another order to show cause why

2

the case should not be dismissed for failure to prosecute. *Id.* Plaintiffs' counsel responded in writing, appeared at the hearing on the order, and indicated that he had fallen ill while traveling in Cameroon in October. Dkt. No. 79. The Court granted Tapang's motions to compel discovery. Dkt. No. 87. Meanwhile, Plaintiffs filed a third motion for a temporary restraining order. Dkt. No. 85.

The parties were ordered to attend a settlement conference with Magistrate Judge Sallie Kim scheduled for December 13, 2019. Dkt. No. 65. Plaintiffs failed to submit their settlement conference statement to Judge Kim by her deadline. Dkt. No. 92.

As of November 2019, Plaintiffs still had not disclosed their identities to Tapang's counsel despite the Court's order to do so under seal and subject to an Attorney's Eyes Only provision of a protective order. Dkt. No. 87. In December, Plaintiffs filed a discovery letter brief stating that they were "not capable of compliance" with that order citing danger to themselves, their families, and their businesses in Cameroon in the event that Tapang's counsel disclosed their identities to Tapang or his associates. Dkt. No. 93. Plaintiffs also requested dismissal of their case without prejudice. *Id.*

The Court stayed the case and rescinded the settlement referral to Judge Kim. Dkt. No. 94. The Court ordered the parties to brief the questions of (1) whether dismissal under Rule 41(a)(2) or 41(b) is proper; (2) whether dismissal should be adjudication on the merits; and (3) whether plaintiffs should be required to pay defendants' costs. Dkt. No. 94. The Court held a hearing on that briefing. Dkt. No. 103. At the hearing, the Court ordered the plaintiffs to disclose their identities ex parte and under seal to the Court, consistent with its previous orders regarding litigating under pseudonym. *Id.* The Court received the ex parte under seal submission of Plaintiffs' identities on January 15, 2020. Dkt. No. 105.[1]

## II. Legal Standard

Federal Rule of Civil Procedure 41(a) allows a plaintiff to voluntarily dismiss an action under certain circumstances. Rule 41(a)(1) allows for dismissal before the opposing

---

[1] The Court will maintain the ex parte submission under seal. The Court retains jurisdiction to regulate the pseudonym status of the Doe plaintiffs.

party serves an answer to the complaint or if all parties stipulate to dismissal. Rule 41(a)(2) allows for dismissal "by court order, on terms that the court considers proper."

Federal Rule of Civil Procedure 41(b) allows a defendant to move for dismissal of a case with prejudice if a plaintiff fails to comply with the Federal Rules of Civil Procedure or with a court order. Dismissal under Rule 41(b) operates as an adjudication on the merits. Under Ninth Circuit precedent, for a Court to dismiss a case under Rule 41(b), it must consider five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendant; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives. *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998) (quoting *Henderson v. Duncan*, 779 F.3d 1241, 1243 (9th Cir. 1986)).

## III. Discussion

### A. Dismissal with Prejudice Under Rule 41(b)

Here, the Court held that dismissal under Rule 41(a)(1) is not proper because: (1) Tapang has answered the complaint, and (2) the parties have not stipulated to dismissal. Dkt. Nos. 55, 94. The Court invited the parties to propose terms of dismissal under Rule 41(a)(2). Dkt. No. 94. The parties did not propose any terms, though Plaintiffs argue for dismissal without prejudice in their opposition to Tapang's motion for sanctions. Dkt. No. 97 at 12. Tapang, on the other hand, moves for dismissal with prejudice under Rule 41(b). Finding that the requisite circumstances for dismissal without prejudice under Rule 41(a)(1) or (2) have not been met here, the Court considers whether dismissal with prejudice is appropriate under Rule 41(b).

#### 1. Interest in Expeditious Resolution of Litigation and the Court's Need to Manage Its Docket

"[T]he public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier*, 191 F.3d 983, 989 (1999). Here, the plaintiffs' noncompliance with Court orders and failure to participate in discovery have caused inefficient delays in the case. Like in *Yourish*, where "Plaintiffs' noncompliance . .

4

. caused the action to come to a complete half, thereby allowing Plaintiffs to control the pace of the docket rather than the Court," here, the plaintiffs have not produced complete initial disclosures or discovery and have failed to meet the referred settlement magistrate judge's deadline, preventing this litigation from resolving expeditiously. These same issues create difficulty in the Court's managing of its docket. These factors favor dismissal with prejudice.

### 2. Risk of Prejudice to the Defendant

The Court next asks how the plaintiffs' delays have prejudiced the defendant. *See Nealey v. Transportation Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280 (9th Cir. 1980). One example of such prejudice might be the loss of evidence. *Id.* at 1281. The defendant's prejudice must be causally connected to the plaintiff's delay. *Id.* If the plaintiff has a non-frivolous reason for delay, the defendant bears the burden of showing how he was prejudiced by it. *Id.*

Here, Tapang has shown that he was prejudiced by plaintiffs' failures to comply with the Court's discovery orders to the tune of $4,192.50 in attorney's fees spent litigating the various motions to compel. Dkt. No. 96 at 4. Plaintiff's counsel has cited illness as a reason for missing some deadlines and a court appearance. Dkt. No. 79. However, this explanation fails to cover all of the missed deadlines and the more general decision by plaintiffs to avoid disclosing their identities to both Tapang's counsel and to the Court for many months, including failing to ever move for a protective order to govern the case. The Court finds that this factor favors dismissal with prejudice.

### 3. Public Policy Favoring Disposition on the Merits

Generally, the public policy favoring disposition on the merits is a factor that weighs against dismissal. *Hernandez*, 138 F.3d at 399. However, here, plaintiffs have had multiple opportunities to argue the merits of their claims: the Court has decided two motions to dismiss based on two complaints, and two temporary restraining orders. Dkt. Nos. 16, 31, 32, 40, 41, 48, 52, 59. These filings included hundreds of pages of exhibits as requests for judicial notice, as well as electronic files including videos allegedly depicting

United States District Court
Northern District of California

the defendant.  *Id.*  The Court considered full briefing, including the lengthy exhibits, on each of those motions and held multiple hearings.  While public policy would favor a full disposition on the merits of the case, here, the parties have litigated and the Court has already decided on the merits of at least some of plaintiffs' allegations.  Indeed, one factor that the Court analyzed in its denials of both motions for temporary restraining orders was the likelihood of the plaintiffs' success on the merits: in both orders, the Court found that the plaintiffs had not shown a likelihood of success on the merits.  Dkt. Nos. 31, 59.

The Court finds that this factor weighs against dismissal here, but not strongly.

### 4.  Less Drastic Alternatives

Plaintiffs have indicated that they wish to dismiss this case and do not intend to continue to prosecute it.  Dkt. No. 97.  As discussed above, the Court has found that the circumstances here do not warrant dismissal without prejudice under Federal Rule of Civil Procedure 41(a).  The Court has considered this less drastic alternative but found that it is inapplicable here.

### 5.  Conclusion on Dismissal Under Rule 41(b)

In sum, the court finds that the factors weigh in favor of dismissal of the action with prejudice under Rule 41(b).  The Court has considered the balance of the needs of "judicial housekeeping . . . related to the efficient administration of judicial business for the benefit of all litigants with cases pending," against fairness to the litigants in this action.  *Nealey*, 662 F.2d at 1279.  On balance, the Court finds that dismissal is appropriate.  The defendant's motion for dismissal with prejudice under Rule 41(b) is hereby GRANTED.  This dismissal functions as an adjudication on the merits.  Fed. R. Civ. P. 41(b).

### B.  Award of Fees

Defendants also move for monetary sanctions to repay the costs of litigating this suit.  Dkt. No. 96.  The Court finds that an award of attorney's fees is appropriate here not for all of defense counsel's time spent on the entire action, but only on time spent fruitlessly seeking discovery that plaintiffs had decided they would not produce.  Under 28 U.S.C. § 1927, "[o]nce counsel is or should be aware of the impropriety of his or her

United States District Court
Northern District of California

conduct, the costs, expenses, and attorneys' fees for any subsequent proceedings may be considered to be excess expenses and counsel may be required to personally pay them." *Cotterill v. City & Cty. of San Francisco*, Case No. 08-cv-02295-JSW JL, 2010 WL 1223146, at * 13 (N.D. Cal. Mar. 10, 2010) (report and recommendation adopted, 2010 WL 1910528 (N.D. Cal. May 110, 2010)) (affirmed in part, remanded in part on other grounds, in *Haynes v. City & Cty. of San Francisco*, 474 F. App'x 689 (9th Cir. 2012)). The Court finds that plaintiffs' counsel, Emmanuel Nsahlai, so unreasonably multiplied the proceedings in this case that it is appropriate for him "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Court finds that Mr. Nsahlai exhibited subjective bad faith in his refusal to participate in discovery while expending both the defendant's and the Court's time by prolonging the litigation—through, for instance, filing a third temporary restraining order—rather than voluntarily dismissing the case.

Tapang's counsel, Curtis Edmonson, requests his normal billing rate of $325.00 per hour as a lodestar rate for an attorney of his experience (14 years). *Id*. at Ex. 2, Edmonson Declaration, at ¶ 5. Mr. Edmonson states that he has spent 147.78 hours on this case from January 2019 through December 2019. *Id*. at ¶ 7. He spent 12.9 of those hours, totaling $4,192.50 in fees, on issues involving Plaintiffs' failure to produce initial disclosures, including their failure to disclose the plaintiffs' identities as ordered. *Id*. at ¶ 8. He also spent 4.23 hours, totaling $1,374.75 in fees, on preparing this fee motion as ordered by the Court. *Id*. at ¶ 9.

The Court finds that both the hourly rate and the time spent on those activities is reasonable. The Court awards the defendant a total of **$5,567.25** in fees representing the time spent working on discovery motions beginning September 1, 2019,[2] against plaintiffs' counsel Emmanuel Nsahlai.

---

[2] Defense counsel Curtis Edmonson has submitted billing records to the Court. Dkt. No. 96, Ex. 2. These records indicate that Mr. Edmonson's work on communicating with plaintiff's counsel about initial disclosures, drafting motions to compel, and preparing other discovery-related matters relevant to this Order began on September 1, 2019. *Id*.

## IV.    Conclusion

The Court GRANTS the defendant's motion to dismiss the case with prejudice under Rule 41(b).

The Court AWARDS $5,567.25 in fees under 28 U.S.C. § 1927, payable by plaintiffs' counsel Emmanuel Nsahlai, for defendant's counsel Curtis Edmonson's time spent seeking discovery and related motion practice. The fee award must be paid within 60 days of this Order.

Plaintiffs' counsel Emmanuel Nsahlai is hereby ordered to provide a copy of this Order to the Court in any future request in this District to litigate with clients proceeding under pseudonym.

The plaintiffs' third motion for a temporary restraining order at Dkt. No. 85 is DENIED as moot. The Clerk of Court is hereby ordered to terminate this case. The Court retains jurisdiction to enforce this Order.

**IT IS SO ORDERED.**

Dated:  January 28, 2020

_____

NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California

8

EX. 3

CACD SANCTIONS

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| No. | CV 20-1115 PA (ASx) | Date | June 18, 2020 |
|---|---|---|---|
| Title | *Cameroon Ass'n of Victims of Ambazonia Terrorism Inc. v. Ambazonia Foundation Inc., et al.* | | |

| Present: The Honorable | Alka Sagar, United States Magistrate Judge | |
|---|---|---|
| Alma Felix | | Not reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| None | | None |

**Proceedings (In Chambers):**  **Order DENYING Plaintiff's Motion for Reconsideration (Dkt. Nos. 34, 35, 36, 37).**

On May 29, 2020, Plaintiff filed a Motion for Reconsideration Awarding Attorney Fees; and For Sanctions Against Defendant Tapang and Defendant's Attorney for False Information and Hoaxes Against the Honorable Judge Anderson ("Motion"), along with a memorandum in support of the Motion ("Mem.").[1] (Dkt. No. 34). On June 8, 2020, Defendant filed an objection to Plaintiff setting the Motion for hearing on June 16, 2020, as not within the time period required by the local rules. (Dkt. No. 36). On June 17, 2020, the District Judge referred the Motion to the undersigned Magistrate Judge. (Dkt. No. 37). The Court finds the Motion appropriate for resolution without a hearing. L.R. 7-15. For the reasons discussed below, the Motion is **DENIED.**

On May 19, 2020, the Court quashed certain subpoenas issued by Plaintiff and awarded Defendant Tapang Ivo Tanku his reasonable attorney fees incurred in bringing the motion to quash. (Dkt. No. 31). The Court found that sanctions were warranted because Plaintiff (1) issued multiple subpoenas in violation of Rules 26 and 45;[2] and (2) refused to meet and confer with Defendant's counsel prior to

---

[1] On May 29, 2020, the Court advised Plaintiff that the hearing information in its Motion was "missing, incorrect, or not timely." (Dkt. No. 35).

[2] The Rule 45 subpoenas were issued to nonparties Square Inc., Bank of America, and PayPal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| No. | CV 20-1115 PA (ASx) | Date | June 18, 2020 |
|---|---|---|---|
| Title | *Cameroon Ass'n of Victims of Ambazonia Terrorism Inc. v. Ambazonia Foundation Inc., et al.* | | |

Defendant filing his *ex parte* application to quash the subpoenas. (*Id.* at 3). Plaintiff and his counsel were jointly ordered to pay $2,730 to Tanku's counsel by no later than June 18, 2020. (*Id.* at 4). Plaintiff now moves the Court to reconsider its ruling and rescind the award of attorney fees to Tanku's counsel. (Motion at 2).

The local rules provide the appropriate standard:

A motion for reconsideration . . . may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

C.D. Cal. L.R. 7-18. Further, a motion for reconsideration shall not "in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.*; *see Hen v. City of Los Angeles,* 244 F. App'x 794, 797 (9th Cir. 2007) ("a motion for reconsideration is not a means to reargue a previous position"); *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) ("A motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before.") (citation omitted).

Plaintiff contends that prior to Defendant filing his *ex parte* application to quash the Rule 45 subpoenas, Plaintiff had already "notified counsel for Square Inc. of its withdrawal of the subpoena." (Mem. at 11). But the email from Plaintiff's counsel to Square Inc.'s counsel, dated May 14, 2020, at 2:22 PM, several hours prior to the *ex parte* application being filed, merely states, "I had contacted squareup about a subpoena; and its compliance with the material support of terrorism statutes under 18 U.S.C. § 2339, applicable to corporations as well as individuals." (Dkt. No. 23). Nowhere in this email chain does it indicate that the subpoena to Square Inc. had been "withdrawn." Further, in a declaration filed on May 23, 2020, Plaintiff's counsel acknowledged that he did not actually "withdraw" the subpoena until 7:05 PM on May 14, 2020. (Dkt. No. 32 (Nsahlai Decl.) at ¶ 2 & Ex. A). In any event, even if the Square Inc. subpoena had been withdrawn mere hours prior to Defendant filing the *ex parte*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| No. | CV 20-1115 PA (ASx) | Date | June 18, 2020 |
|---|---|---|---|
| Title | *Cameroon Ass'n of Victims of Ambazonia Terrorism Inc. v. Ambazonia Foundation Inc., et al.* | | |

application, Plaintiff's counsel does not dispute that he issued multiple nonparty subpoenas in violation of Rules 26 and 45 and failed to timely meet and confer with Defendant's counsel as required by the local rules.[3]

Plaintiff also argues that "new facts of defendants [*sic*] Tapang continuous false information and hoaxes against Judge Anderson Percy [*sic*] in violation of penal code 18 U.S.C. § 1038, even after his attorney was notified, show that an Award of expenses is unjust." (Mem. at 8). But any Facebook posts (*see id.* at 11–13)—whether accurate or not—are not in evidence in this proceeding and in any event are not relevant to the Court's May 19, 2020 Order.

Finally, Plaintiff asserts that the fees sought by Defendant's counsel are "excessive." (Mem. at 16–17). However, despite rearguing why the *ex parte* application and the reply in support were unnecessary, Plaintiff does not posit what fees would have been appropriate. The Court reiterates its finding that the 8.2 hours spent by Defendant's counsel on the *ex parte* application and reply were "reasonable." (*See* Dkt. No. 31 at 3–4).

Plaintiff's Motion for Reconsideration Awarding Attorney Fees; and For Sanctions Against Defendant Tapang and Defendant's Attorney for False Information and Hoaxes Against the Honorable Judge Anderson [34] is **DENIED**. Plaintiff and his counsel shall immediately pay $2,730 to counsel for Tanku, as previously ordered.

IT IS SO ORDERED.

cc: Percy Anderson
    United States District Judge

Initials of Preparer     0     :     00
                AF

---

[3] Plaintiff's counsel merely stating "I oppose" in response to Defendant's notice of his intent to file the *ex parte* application (Dkt. No. 26, Ex. B) does not constitute an intent to meet and confer. (*See* Mem. at 14–15).

EX. 4

FACEBOOK PUBLICATION

# facebook

Log In

## Mimi Mefo Info's Post

✕

 **Mimi Mefo Info**
January 29 · 🌐

A letter from the Nsahlai Law Firm has called on the U.S. Department of Homeland Security (DHS) to revoke immigration statuses and expedite deportation proceedings for members of the Ambazonia separatist movement residing in the country. The letter claims that Tapang Ivo Tanku, Eric Tano Tataw, Christopher Anu, Samuel Ikome Sako and John Mbah Akuro, and many others listed names—have allegedly used their positions to incite violence, solicit funds for terrorist activities, and recruit supporters. It says these crimes align with President Trump's calls to deport people accused of committing crimes in the USA. Here is the letter and full list of names  https://buff.ly/3CF85Xb

#USA #DonaldTrump #Ambazonia #Separatists #immigration



MIMIMEFOINFOS.COM
**U.S. Law Firm Calls for Deportation of Ambazonia Separatists**
Nsahlai Law Firm urges U.S. Department of Homeland Security to take action against Ambazonia ...

👍😂 1.1K                                              893 comments   29 shares

▢ Like                    ▢ Comment                    ▢ Share

**Most relevant** ▢

✎ Author

**facebook**

Log In

EX. 5

The Sun Publication

**THE Sun**
NOTHING IS HIDDEN UNDER THE SUN

SUMMER SERVER DEALS   UP TO 35% OFF   FASTCOMET   START NOW

Home / NEWS / Crackdown on illegal immigrants in the US: Trump administration urged to flush out Anglophone separatists

NEWS

# Crackdown on illegal immigrants in the US: Trump administration urged to flush out Anglophone separatists

February 3, 2025 / Steve / No Comments

*By NEB*

In line with the ongoing crackdown on illegal immigrants resident in the United States of America, the Trump administration has been requested to enforce its immigration policies against 'Ambazonia' separatists based in the country. The request was recently tabled at the US Department of Homeland Security (DHS), by US-based international law firm, Nsahlai Law Firm.

Recall Nsahlai Law Firm has been working tooth and nail in a mission to bring to the limelight what it considers atrocities and crimes against humanity perpetuated by separatist leaders in Cameroon's North West and South West Regions and urging for them to be brought to book.

The Firm is requesting the Trump administration to engage a number of actions against separatists residing in the US, including Expedited Review of Asylum Applications, Revocation of Immigration Status and Deportation proceedings.



*US President, Donald J. Trump on mission to flush out illegal immigrants from his country, USA*

"Ensure asylum applications from Ambazonia Separatists are reviewed under enhanced vetting procedures, with a focus on their alleged support for terrorism, revoke the green cards and citizenship of individuals found to have violated U.S. Laws, particularly those engaged in terrorism or fraud, prioritise deportation for those whose asylum applications have been denied or who are found inadmissible under US Law", it indicates specifically.

Alongside a list carrying the names of 34 separatists who the Firm holds have committed immigration fraud and conspired to international terrorism and human rights violation, Nsahlai Law Firm specifically mentions persons like Tapang Ivo Tanku, Eric Tano Tataw, John Mbah Akuro, Christopher Anu Fobeneh, and Samuel Sako Ikome, as those who have "used their positions to incite violence, solicit funds for terrorist

activities and recruit supporters."

The firm maintains that, "Many of these individuals have pending asylum applications or have been denied asylum and are appealing…have committed immigration fraud by concealing their involvement in crimes against humanity and terrorism under INA Section 212 (a) (6) (c) (fraud and misrepresentation). The Law Firm also believes that targeting the said group of people in the Trump administration immigration crackdown will protect national security and fulfill all factors necessary for robust federal prosecutions.

"The actions of these individuals undermine the integrity of the US immigration system. Their crimes, including incitement to violence and material support of terrorism, have caused untold harm to innocent civilians. These individuals exploit the asylum system to evade accountability while continuing their operations abroad", it states.

According to Nsahlai Law Firm, "The Ambazonia Separatist movement and its members are the prime example of the type of immigrants that the Trump administration seeks to target and deport", as the group, according to the firm, is not only on the wrong side of the law in the US but has also engaged in crimes against humanity, including killing of school children."

Nonetheless, The SUN gathered that those targeted by Nsahlai Law Firm are being urged to pursue legal action against the Firm, on grounds of defamation and libel. "Comrades targeted by Nsahlai's defamatory statements, allegedly made under the guise of a law firm, should consider taking legal action. Filing civil lawsuits for defamation and libel are viable options", a sympathiser writes.

However, with regards to Cameroonians in general currently residing in the United States, there are opinions that if certain Cameroonians were granted TPS, they won't be affected by the deportation, even if they were previously under Removal Proceedings.

Also, "Those with TPS applications in process might be released if arrested, offering a glimmer of hope…TPS status is granted by Congress, and only Congress can revoke it, providing a safeguard for TPS holders."

This latter opinion is said to be a positive development to many Cameroonians who are in a state of uncertainty as to their future stay in the US.

EX. 6

CAVAT CA CORP REGISTRATION

**4552252**



**Secretary of State**
**Articles of Incorporation of a**
**Nonprofit Public Benefit Corporation**

**ARTS-PB-501(c)(3)**

**FILED**
Secretary of State
State of California

**JAN 29 2020**

1-CC

**IMPORTANT — Read Instructions before completing this form.**

**Filing Fee** – **$30.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00

*Note:* A separate California Franchise Tax Board application is required to obtain tax exempt status. For more information, go to https://www.ftb.ca.gov.

**This Space For Office Use Only**

**1. Corporate Name** (Go to www.sos.ca.gov/business/be/name-availability for general corporate name requirements and restrictions.)

The name of the corporation is **CAMEROON ASSOCIATION OF VICTIMS OF AMBAZONIA TERRORISM INC.**

**2. Business Addresses** (Enter the complete business addresses. Item 2a cannot be a P.O.Box or "in care of" an individual or entity.)

| a. Initial Street Address of Corporation - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 9801 BALBOA BLVD STE 506 | LOS ANGELES | CA | 91325 |
| b. Initial Mailing Address of Corporation, if different than Item 2a | City (no abbreviations) | State | Zip Code |
| | | | |

**3. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 3a and 3b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| EMMANUEL | | NSAHLAI | |
| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
| 3250 WILSHIRE BLVD STE 1500 | LOS ANGELES | CA | 90010 |

**CORPORATION** – Complete Item 3c. Only include the name of the registered agent Corporation.

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 3a or 3b

**4. Purpose Statement**

Item 4a: One or both boxes must be checked.
Item 4b: If "public" purposes is checked in Item 4a, or if you intend to apply for tax-exempt status in California, you must enter the specific purpose in Item 4b.

a. This corporation is a nonprofit public benefit corporation and is not organized for the private gain of any person. It is organized under the Nonprofit Public Benefit Corporation Law for: ☑ **public** purposes. ☑ **charitable** purposes.

b. The specific purpose of this corporation is to **Provide humanitarian and legal assistance to victims of terrorism**.

**5. Additional Statements** (See Instructions and Filing Tips.)

a. This corporation is organized and operated exclusively for the purposes set forth in **Article 4** hereof within the meaning of Internal Revenue Code section 501(c)(3).

b. No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and this corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

c. The property of this corporation is irrevocably dedicated to the purposes in **Article 4** hereof and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person.

d. Upon the dissolution or winding up of this corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of this corporation shall be distributed to a nonprofit fund, foundation or corporation which is organized and operated exclusively for **charitable, educational and/or religious** purposes and which has established its tax-exempt status under Internal Revenue Code section 501(c)(3).

**6. Read and Sign Below** (This form must be signed by each incorporator. See Instructions. Do not include a title.)

_____
Signature

EMMANUEL NSAHLAI
Type or Print Name

2019 California Secretary of State
bizfile.sos.ca.gov

BA20231849158



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**CA NONPROFIT CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: BA20231849158
Date Filed: 12/7/2023

### Entity Details

| | |
|---|---|
| Corporation Name | CAMEROON ASSOCIATION OF VICTIMS OF AMBAZONIA TERRORISM INC. |
| Entity No. | 4552252 |
| Formed In | CALIFORNIA |

### Street Address of California Principal Office of Corporation

| | |
|---|---|
| Street Address of California Office | 8731 WHITAKER AVE NORTHRIDGE, CA 91343 |

### Mailing Address of Corporation

| | |
|---|---|
| Mailing Address | 8731 WHITAKER AVE NORTHRIDGE, CA 91343 |
| Attention | EMMANUEL NSAHLAI |

### Officers

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| ➕ EMMANUEL NSAHLAI | 8731 WHITAKER AVE NORTHRIDGE, CA 91343 | Chief Executive Officer |
| ➕ Francis Lemnyuy | 8731 WHITAKER AVE, NORTHRIDGE, CA 91343 NORTHRIDGE, CA 91343 | Chief Financial Officer |
| ➕ Christian Bivirka | 8731 WHITAKER AVE NORTHRIDGE, CA 91343 | Secretary |

### Additional Officers

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| None Entered | | | |

### Agent for Service of Process

| | |
|---|---|
| Agent Name | EMMANUEL NSAHLAI |
| Agent Address | 11755 WILSHIRE BLVD STE 1250 LOS ANGELES, CA 90025 |

### Email Notifications

| | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

### Electronic Signature

☒ By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*Emmanuel Nsahlai*
Signature

*12/07/2023*
Date

B2311-2423 12/07/2023 2:49 AM Received by California Secretary of State