**JED CHEDID, ESQ. (Ohio Bar No. 101457)**
(Admitted *Pro Hac Vice*)
**Chedid & Co., LLC**
38355 Terrell Dr.
North Ridgeville, Ohio, 44039
Phone: (440) 581-2075
jchedid@chedidlegal.com

**NSAHLAI LAW FIRM**
**EMMANUEL NSAHLAI,** SBN (207588)
email: nsahlai.e@nsahlailawfirm.com
10490 WILSHIRE BLVD, STE 1600
LOS ANGELES, CA 90024
Tel (213) 797-0369
Fax (213) 973-4617

Attorney for Defendant

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IVO TANKU TAPANG,** | § Case No.: 2:25-cv-01794 |
| | § |
| Plaintiff, | § **DEFENDANT EMMANUEL** |
| | § **NSAHLAI'S NOTICE OF MOTION** |
| vs. | § **AND (1) SPECIAL MOTION TO** |
| | § **STRIKE UNDER CALIFORNIA** |
| **EMMANUEL NSAHLAI.** | § **CODE OF § 425.16 ( ANTI-SLAPP** |
| Defendant. | § **STATUTE ), OR, IN THE** |
| | § **ALTERNATIVE, (2) MOTION TO** |
| | § **DISMISS PURSUANT TO RULE** |
| | § **12(b)(6); MEMORANDUM OF** |
| | § **POINTS AND AUTHORITIES IN** |
| | § **SUPPORT THEREOF** |
| | § |
| | § [Filed concurrently with Declaration of |
| | § Defendant Emmanuel Nsahlai in |
| | § Support with Exhibits; Declaration of |

-1-

*Tapang v. Nsahlai*                    Case .No. 2:25-cv-01794
DEFENDANT'S SPECIAL MOTION TO STRIKE AND MTN TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

§    Defendant Emmanuel Nsahlai as
§    counsel and victim in support with
§    Exhibits; Declaration of CAVAT Board
§    Member and Director Kevin Ngassa in
§    Support; Declaration of victim Mangoh
§    Blandine Nforshi in Support;
§    Declaration of victim Kimbi Betrand in
§    Support; Request for Judicial Notice
§    with Exhibits; and Proposed Order filed
     concurrently herewith]

**Date:** June 17, 2025
**Magistrate Judge:** Stephanie S.
Christensen
**Action Filed**: March 02, 2025
**Trial Date**: Not Set

*Tapang v. Nsahlai*                           Case .No. 2:25-cv-01794
DEFENDANT'S SPECIAL MOTION TO STRIKE AND MTN TO DISMISS

1

# <u>TABLE OF CONTENTS</u>

2

<u>TABLE OF CONTENTS</u>.................................................................................i

<u>TABLE OF AUTHORITIES</u>........................................................................iii

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>.................................2

I.    INTRODUCTION AND PRELIMINARY STATEMENT..........................2

II.   FACTUAL BACKGROUND..................................................2

III.  LEGAL STANDARDS.......................................................2

       A.  CALIFORNIA'S ANTI-SLAPP STATUTE...........................5

       B.  FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)..............6

IV.   ARGUMENT.............................................................6

       A.  ATTORNEY NSAHLAI'S STATEMENTS CONSTITUTE
           PROTECTED PETITIONING ACTIVITY..........................6

       B.  TAPANG'S CLAIM FALLS SQUARELY WITHIN THE
           SCOPE OF CALIFORNIA'S ANTI-SLAPP STATUTE...........7

       C.  THE LITIGATION PRIVILEGE BARS TAPANG'S CLAIM
           OF DEFAMATION................................................9

       D.  THE NOERR-PENNINGTON DOCTRINE BARS TAPANG'S
           CLAIM OF DEFAMATION.......................................13

       E.  TAPANG'S CLAIM OF DEFAMATION CANNOT
           SUCCEED BECAUSE THE ASSERTIONS IN
           THE LETTER REGARDING TAPANG ARE
           SUBSTANTIALLY TRUE.........................................14

       F.  THE ASSERTIONS CONTAINED IN THE LETTER
           CONSTITUTE NON-ACTIONABLE OPINION BASED ON
           DISCLOSED FACTS.............................................15

       G.  TAPANG CANNOT SUCCED ON HIS CLAIM OF
           DEFAMATION BECAUSE HE IS A LIMITED
           PUBLIC FIGURE WHO CANNOT ESTABLISH ACTUAL
           MALICE......................................................17

       H.  TAPANG CANNOT SUCCED ON HIS CLAIM OF
           DEFAMATION BECAUSE NO ACTUAL PUBLICATION
           OCCURRED....................................................18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Tapang v. Nsahlai*                       Case .No. 2:25-cv-01794
DEFENDANT'S SPECIAL MOTION TO STRIKE AND MTN TO DISMISS

**I.  THE COURT MUST AWARD ATTORNEY NSAHLAI**
**HIS COSTS OF HE SUCCEEDS ON HIS ANTI-SLAPP**
**MOTION.................................................................19**

**J.  TAPANG FAILS TO STATE A CLAIM UNDER**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)...........19**

**V.    CONCLUSION...............................................................22**

1

# **TABLE OF AUTHORITIES**

2

**Cases**

3   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................... 7, 20, 22, 23

4   *Barker v. Fox & Assocs.*, 240 Cal. App. 4th 333, 350 (2015) ................................ 22

5   *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 526 (2002) ........................................ 15

6   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................ 7, 20, 22, 23

*Bonni v. St. Joseph Health System*, 83 Cal.App.5th 288, 302 [298 Cal.Rptr.3d 730]
7       (2022) ............................................................................................. 12

8   *Braun v. Bureau of State Audits* (1998) 67 Cal.App.4th 1382, 1390....................... 12

9   *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) ................. 7

10  *Hansen v. California Dept. of Corrections and Rehabilitation* (2008) 171
11      Cal.App.4th 1537, 1547, 90 Cal. Rptr. 3d 381 ..................................... 12

12  *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1078 (N.D. Cal. 2012) ...................... 6

13  *HMS Capital, Inc. v. Lawyers Title Co.*, 118 Cal. App. 4th 204, 211–12 (2004)....... 7

14  *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 920 ............................................ 12

15  *King v. Borges* (1972) 28 Cal.App.3d 27, 34............................................................. 12

*Lemke v. Sutter Roseville Med. Ctr.*, No. C078983, 2017 Cal. App. Unpub. LEXIS
16      933, *21 (Feb. 9, 2017)....................................................................... 12

17  *Lucas v. Swanson & Dowdall*, 53 Cal. App. 4th 98 (1997) ..................................... 15

18  *Martin v. Inland Empire Utils. Agency*, 198 Cal. App. 4th 611, 623 (2011)............. 7

19  *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001) ....................... 6

20  *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002) ........................................................ 6

21  *Neurelis, Inc. v. Aquestive Therapeutics, Inc.*, 71 Cal. App. 5th 769 (2021)............ 15

22  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d at 983 ............................. 19

*Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993) .................................................. 11, 12
23  *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990)..................................................... 11

24  *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929–31 (9th Cir. 2006)................................ 15

25  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) ........................ 7

26  *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049 (2009)............................... 15

27  *White v. Lee*, 227 F.3d 1214, 1227–28 (9th Cir. 2000)............................................. 15

28

**Statutes and Rules**

8 U.S.C. §1158(b)(2)(A)(v) ........................................................................ 14

8 U.S.C. §1182(a)(3)(B) ............................................................................ 14

8 U.S.C. §1182(a)(6)(C) ............................................................................ 14

Cal. Civ. Code §47(b) ...................................................................... 8, 9, 10, 20

California Code of Civil Procedure §425.16 ...................................................... 1, 25

California Code of Civil Procedure §425.16(a) ...................................................... 4

California Code of Civil Procedure §425.16(b)(1) .................................................. 6

California Code of Civil Procedure §425.16(c) .................................................. 21, 25

California Code of Civil Procedure §425.16(e) ............................................. 4, 6, 7, 8

California Code of Civil Procedure §425.16(e) (1)–(4) ............................................ 5

Fed. R. Civ. P. 12(b)(6) ...................................................................... passim

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that on June 17, 2025 at 1:30 PM in Courtroom

3  790, 7th Floor, of the above-captioned Court, located at 255 E. Temple St., Los

4  Angeles, CA 90012, or as soon thereafter as counsel may be heard, Defendant

5  Emmanuel Nsahlai ("Attorney Nsahlai") will, and hereby does, move the Court for an

6  Order striking the complaint pursuant to California Code of Civil Procedure § 425.16,

7  or, in the alternative, dismissing the complaint with prejudice pursuant to Federal Rule

8  of Procedure 12(b)(6).

9      This motion is based on the grounds that Plaintiff Ivo Tanku Tapang's

10  ("Tapang") cause of action for defamation arises from protected activity under the

11  Anti-SLAPP statute, namely written communications made in connection with official

12  proceedings and matters of public interest, including reporting suspected criminal and

13  terrorist conduct to U.S. government agencies and engaging in attorney advocacy.

14  Plaintiff's cause of action for defamation fails to state a claim pursuant to Federal Rule

15  of Civil Procedure 12(b)(6).

16      This motion is based on this Notice of Motion and Motion, the attached

17  Memorandum of Points and Authorities, all pleadings and papers on file in this action,

18  and upon such other matters as may be presented to the Court at the time of the

19  hearing. This Motion is made following the conference of counsel pursuant to Local

20  Rule 7-3, which took place on April 17, 2025. (See Declaration of Emmanuel

21  Nsahlai.)

22

23  DATED: April 25, 2025              Respectfully submitted,

24

25                                     /s/  *Jed Chedid, Esq.*

26                                     **JED CHEDID, ESQ.**
                                       **EMMANUEL NSAHLAI**
27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

2

## I.     INTRODUCTION AND PRELIMINARY STATEMENT

3       This defamation suit is a classic Strategic Lawsuit Against Public Participation

4 (SLAPP), brought by Tapang - a prominent and self-identified figure in the

5 Ambazonia separatist movement - to suppress lawful, protected legal advocacy.

6 Tapang has admitted to being a spokesperson and strategist for the Ambazonia

7 Defense Forces (ADF), a separatist militia group implicated in terrorism, kidnapping,

8 and violence against civilians in Cameroon. (See RJN, Exs. D, G; Declaration of

9 Attorney Nsahlai ["Nsahlai Decl."] ¶¶ 6, 12–13; Declaration of CAVAT Board

10 Member ["CAVAT Decl."] ¶¶ 4–6.)

11      Tapang now seeks to impose civil liability on Attorney Nsahlai, a California

12 attorney, for submitting an evidentiary letter to the U.S. Department of Homeland

13 Security (DHS), Department of Justice (DOJ), and Federal Bureau of Investigation

14 (FBI) in January 2025. This letter was prepared and submitted in Attorney Nsahlai's

15 capacity as counsel to victims of ADF violence, and as a victim. (See Attorney Nsahlai

16 Decl. ¶¶ 4–5, 11–13; Victims Mangoh Nforshi and Kimbi Betrand Declaration

17 ["Victim Decl."] ¶¶ 6–8.; Cavat Decl. ." ¶¶ 1–10.))

18      The letter formed part of an ongoing legal and advocacy campaign initiated in

19 2018, and was supported by: (1) public audiovisual material, including videos of

20 Plaintiff advocating violence and ransom-taking (RJN, Ex. E; Attorney Nsahlai Decl.,

21 Ex. B); (2) social media fundraising campaigns tied to ADF military efforts (RJN, Ex.

22 F; CAVAT Decl. ¶¶ 5–6); (3) prior civil litigation, including *Doe v. Tapang*, No. 5:18-

23 cv-07221 (N.D. Cal.); (4) *CAVAT v. Ambazonia Foundation*, No. CV 20-1115 PA

24 (RJN, Exs. A, D); and (5) documented concerns over immigration fraud arising from

25

26

[1] https://www.hrw.org/report/2021/12/16/they-are-destroying-our-future/armed-separatist-attacks-students-teachers-

27 and ("They Are Destroying Our Future" Armed Separatist Attacks on Students, Teachers, and Schools in Cameroon's Anglophone Regions.)

28

Tapang's alleged omissions of material affiliations in asylum filings (RJN, Ex. H; Nsahlai Decl. ¶ 13).

Tapang relies on a single paragraph in that letter that names him among several "prominent members of the Ambazonia movement" and alleges that they "used their positions to incite violence, solicit funds for terrorist activities, and recruit supporters." This generalized grouping, however, fails to meet the constitutional and statutory threshold required for a defamation claim. California law is clear: **group-based accusations against multiple individuals without specific attribution to the plaintiff are not actionable** unless the group is so small that the statement can be reasonably understood to refer to the plaintiff alone. (*Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1046 (1986).)

Tapang is one of over fifty individuals named in a general advisory to government agencies - **none of whom are described in detail or tied to particular acts**. The letter does not allege that Tapang personally committed immigration fraud or any act of terrorism. Instead, it describes patterns of conduct relevant to government investigation, supported by audiovisual evidence and prior litigation records. (See RJN, Exs. E–G; Nsahlai Decl. ¶¶ 11–13.)

Courts have repeatedly held that generalized critiques of public figures and their affiliations are not defamatory where the statements are: (1) not specifically directed at the plaintiff, (2) based on disclosed or public facts, or (3) submitted to official bodies in the context of petitioning. (*Partington v. Bugliosi*, 56 F.3d 1147, 1156–57 (9th Cir. 1995); *Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995); *White v. Lee*, 227 F.3d 1214, 1227–28 (9th Cir. 2000).)

Tapang's effort to recharacterize a broadly worded and lawfully submitted report into a personalized defamation claim is both legally deficient and constitutionally barred. It is precisely the type of litigation the Anti-SLAPP statute was designed to prevent.

## II.     FACTUAL BACKGROUND

Tapang has publicly aligned himself with the Ambazonia Defense Forces (ADF), a secessionist militant group responsible for widespread violence in Cameroon. He has appeared in livestreams, videos, and social media posts calling for the kidnapping of Cameroonian-Americans, destruction of property, and armed attacks on civilians and officials. (See RJN, Ex. E; Declaration of Emmanuel Nsahlai ["Nsahlai Decl."], Ex. B; [Victims Nforsh and Betrand Decls.] ¶¶ 5–7.)

Tapang has further advocated for a "liberation tax" on diaspora communities, designed to extort funds to finance violent separatist operations, and has personally promoted fundraising campaigns on U.S.-based platforms such as PayPal and Facebook. (See RJN, Ex. F; Nsahlai Decl., Ex. C; Declaration of CAVAT Board Member Kevin Ngassa ["CAVAT Decl."] ¶¶ 5–6.).

As legal counsel to multiple victims of ADF violence, including those injured in the 2024 Nkambe bombing, Attorney Nsahlai has filed multiple civil lawsuits and criminal complaints, including *Doe v. Tapang*, Case No. 5:18-cv-07221 (N.D. Cal.), and *Cameroon Ass'n of Victims of Ambazonia Terrorism v. Ambazonia Foundation*, No. CV-20-1115 PA. (See RJN, Exs. A, D; CAVAT Decl. ¶¶ 3–7.).

In January 2025, Attorney Nsahlai submitted a detailed evidentiary letter to DHS, DOJ, and the FBI. The letter cited (1) video and social media evidence of Plaintiff ordering kidnappings and attacks (RJN, Ex. E; Nsahlai Decl. ¶ 12); (2) fundraising tied to material support of terrorism (RJN, Ex. F; CAVAT Decl. ¶ 6); (3) statements advocating torture, extortion, and violent reprisals (RJN, Ex. G; Victims Nforsh and Betrand Decls ¶¶ 6–8); and (4) Tapang's confirmed asylum filings, which allegedly omitted material affiliations with terrorist-designated entities (RJN, Ex. H; Nsahlai Decl. ¶ 13).

These representations have been corroborated by: (1) U.S. federal indictments for material support of terrorism in *United States v. Alambi Walters*, No. 1:21-cr-

00194 (W.D. Mo.) (RJN, Ex. I); (2) the arrest and pre-trial detention of ADF President Cho Lucas Yabah in Norway for crimes against humanity, including mass civilian attacks (RJN, Ex. J); and (3) Tapang's and his allies' public statements confirming support for the 2024 IED explosion at Nkambe's Youth Day celebration Victims Nforsh and Betrand Decls. ¶ 4; RJN, Ex. K).

Tapang's complaint poorly attempts to recast these well-documented assertions as defamatory and also fails to address or overcome the array of constitutional, statutory, and evidentiary protections afforded to Attorney Nsahlai's legal advocacy and victim-representation efforts. Because Tapang cannot plausibly plead falsity, malice, or actionable publication—and because the letter falls within the core of protected First Amendment activity—the Complaint must be stricken under Cal. Civ. Proc. § 425.16 or dismissed under Fed. R. Civ. P. 12(b)(6).

## III.    LEGAL STANDARD

### A.    CALIFORNIA'S ANTI-SLAPP STATUTE

California's anti-SLAPP law protects against lawsuits that target free speech or petitioning activity. *See* California Code of Civil Procedure §425.16(a); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). Courts apply a two-step process: (1) the defendant must show the claim arises from protected activity, and (2) the burden shifts to the plaintiff to demonstrate a probability of prevailing. *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002); *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1078 (N.D. Cal. 2012).

Protected activity includes: (1) statements made before or in connection with an official proceeding; (2) statements made in public forums on matters of public interest; or (3) conduct in furtherance of the right to petition or speak freely. *See* California Code of Civil Procedure §425.16(e); *Martin v. Inland Empire Utils. Agency*, 198 Cal. App. 4th 611, 623 (2011). To survive, Tapang must establish a prima

1  facie case with admissible evidence - not mere allegations. *HMS Capital, Inc. v.*
2  *Lawyers Title Co.*, 118 Cal. App. 4th 204, 211–12 (2004).

3  **B.    FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

4  Rule 12(b)(6) permits dismissal for failure to state a claim. To survive, a
5  complaint must contain sufficient factual matter to state a claim that is plausible on its
6  face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556
7  U.S. 662, 678 (2009). Labels, conclusions, or formulaic recitations of elements are
8  insufficient. *Twombly*, 550 U.S. at 555.

9  Dismissal is appropriate where the complaint lacks a cognizable legal theory or
10  sufficient facts. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir.
11  2019). Courts may consider materials referenced in the complaint or subject to judicial
12  notice. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

13  **IV.    ARGUMENT**

14  **A. ATTORNEY NSAHLAI'S STATEMENTS CONSTITUTE**
15  **PROTECTED PETITIONING ACTIVITY**

16  Tapang's defamation claim arises solely from Defendant's January 2025 letter
17  to DHS, DOJ, and the FBI—federal agencies responsible for investigating terrorism
18  and immigration fraud. This letter, submitted in the context of ongoing legal advocacy
19  since 2018, constitutes classic petitioning activity protected under both the First
20  Amendment and California's anti-SLAPP statute, Cal. Civ. Proc. Code §
21  425.16(e)(1)–(4).

22  California courts consistently hold that reports to government agencies
23  concerning matters of public interest—including criminal activity and threats to
24  national security—fall squarely within the scope of protected activity. See *Navellier*
25  *v. Sletten*, 29 Cal. 4th 82, 88 (2002); *Vergos v. McNeal*, 146 Cal. App. 4th 1387, 1395
26  (2007). Legal communications made in anticipation of, or during, official

27
28

investigations are expressly safeguarded. See *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777 (1996); *Plumleigh v. City of Santa Ana*, 754 F. Supp. 2d 1201, 1206 (C.D. Cal. 2010).

The single paragraph cited in Tapang's Complaint alleges that a group of ADF or Ambazonia people incited violence, solicited terrorist funding, and concealed material facts in immigration filings—statements grounded in documented audiovisual and social media evidence and made in connection with civil and criminal actions including *Doe v. Tapang* and *CAVAT v. Ambazonia Foundation* (See RJN, Ex. A, C, D).

Because Tapang's claim directly targets Attorney Nsahlai's exercise of protected petitioning rights in a law enforcement context, it meets the first prong of the anti-SLAPP analysis. (See Declaration of Emmanuel Nsahlai ¶¶ 4–6, 11–14; RJN, Ex. C–F.) The burden now shifts to Tapang to establish a probability of prevailing, and, as detailed below, he cannot.

## B. TAPANG'S CLAIM FALLS SQUARELY WITHIN THE SCOPE OF CALIFORNIA'S ANTI-SLAPP STATUTE

Even if Tapang's allegations were taken at face value, they describe nothing more than Attorney Nsahlai's constitutionally protected legal petitioning activity—specifically, communications to law enforcement in furtherance of ongoing legal proceedings and investigations involving transnational terrorism. These are precisely the types of actions that California's anti-SLAPP statute was enacted to protect. (See Declaration of Emmanuel Nsahlai ["Nsahlai Decl."] ¶¶ 4–6, 11–14; see also RJN, Exs. A–D; Declaration of CAVAT Board Member ["CAVAT Decl."] ¶¶ 6–9.)

California's anti-SLAPP law applies to any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech...in connection with a public issue." Cal. Code Civ. Proc. § 425.16(b)(1).

The statute must be "construed broadly" to safeguard rights of petition and free expression. See *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1119–20 (1999).

A defendant satisfies the first prong of the anti-SLAPP test by showing that the challenged claim arises from protected activity defined in § 425.16(e). As discussed in Section I, these include statements made before or in connection with an issue under consideration by a judicial, executive, or other official proceeding (§ 425.16(e)(1)–(2)) and statements or conduct in connection with an issue of public interest (§ 425.16(e)(3)–(4)). See *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016) (anti-SLAPP statute applies to claims "based on allegations of protected activity.")

The single paragraph that forms the basis of Tapang's claim appears in a letter sent in January 2025 by Attorney Nsahlai to the U.S. Department of Homeland Security, the Department of Justice, and the Federal Bureau of Investigation. The letter notes a group of ADF and Ambazonia individuals who have incited violence, Solicited funds for terrorist activities, and committed immigration fraud by concealing crimes of terrorism in immigration filings. (See Nsahlai Decl. ¶ 12; RJN, Exs. E–F; CAVAT Decl. ¶¶ 7–9; Declaration of Victims Nforsh and Betrand Decls.] ¶¶ 5–7.) This letter falls squarely within § 425.16(e) for the following reasons:

**1. Form:** The letter was a legal and evidentiary communication made by an attorney to government bodies empowered to investigate crimes. (See Nsahlai Decl. ¶ 11; CAVAT Decl. ¶ 10.) See also *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 360 (2004) (statements to law enforcement are protected).

**2. Forum:** The letter was directed to executive branch agencies in connection with formal proceedings, criminal investigations, and administrative complaints—precisely the type of "official proceedings" contemplated by § 425.16(e)(2). See *Vergos v. McNeal*, 146 Cal. App. 4th 1387, 1395 (2007); RJN, Ex. A (Doe v. Tapang docket); (see also Nsahlai Decl. ¶¶ 5–6.)

1    **3. Content:** The content of the letter concerned terrorism, immigration fraud,

2    and transnational threats—matters of critical public interest and global concern. (See

3    RJN, Exs. G, H, I; Victim Decl. ¶¶ 4–6.) See also, *Weinberg v. Feisel*, 110 Cal. App.

4    4th 1122, 1132 (2003); *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 17 (1995).

5    The defamation claim is not incidental to a broader cause of action—it directly

6    attacks the content of Attorney Nsahlai's petitioning activity. It seeks to impose civil

7    liability based on protected speech submitted as part of a confidential law enforcement

8    report. Courts have repeatedly held that when a cause of action targets a protected act

9    itself, the first prong of the anti-SLAPP test is satisfied. See *Park v. Board of Trustees*

10   *of Cal. State Univ.*, 2 Cal. 5th 1057, 1062 (2017).

11   Tapang's entire lawsuit is predicated on Attorney Nsahlai's submission of

12   information to U.S. authorities regarding Plaintiff's conduct. (See Nsahlai Decl. ¶¶

13   12–14; RJN, Exs. A–D.) Indeed, Tapang's defamation claim arises solely from

14   Attorney Nsahlai's constitutionally and statutorily protected petitioning activity. It is

15   based on a single communication to government agencies concerning criminal activity

16   and matters of public concern about a group of over fifty individuals.

17   This is exactly the type of claim the statute was designed to strike at an early

18   stage to protect against chilling effects on free expression and civic engagement.

19   Therefore, under § 425.16(e), this claim must be stricken unless Plaintiff can meet his

20   burden under the second prong, which—as established in the sections that follow—he

21   cannot.

22   **C. THE LITIGATION PRIVILEGE BARS TAPANG'S CLAIM OF**

23   **DEFAMATION**

24   **1.    The Litigation Privilege Applies to Attorney Nsahlai's Letter**

25   Even if Tapang could satisfy the elements of defamation—and he cannot—his

26   claim would still fail as a matter of law under California's litigation privilege, codified

27

28

*Tapang v. Nsahlai*                                    Case .No. 2:25-cv-01794
DEFENDANT'S SPECIAL MOTION TO STRIKE AND MTN TO DISMISS

at Cal. Civ. Code §47(b). This longstanding doctrine bars tort claims arising from communications made in connection with judicial or quasi-judicial proceedings, including pre-litigation communications with law enforcement and regulatory agencies. See *Silberg*, 50 Cal. 3d 205, 212; *Hagberg*, 32 Cal. 4th 350, 364. (See also Declaration of Emmanuel Nsahlai ["Nsahlai Decl."] ¶¶ 4–6, 10–12; RJN, Exs. A, B, C.)

California's litigation privilege applies to all publications or broadcasts made: (1) in judicial or quasi-judicial proceedings, (2) by authorized participants, (3) to achieve the objects of the litigation, and (4) with some connection or logical relation to the action. *Silberg*, 50 Cal. 3d 205, 212. The privilege applies equally to pre-litigation and informal administrative communications, such as those made to law enforcement agencies, when made in anticipation of or in connection with litigation. *Hagberg*, 32 Cal. 4th 350, 364.

The privilege is based on "[t]he importance of providing to citizens free and open access to governmental agencies for the reporting of suspected illegal activity." (*King v. Borges* (1972) 28 Cal.App.3d 27, 34.) The litigation privilege has been broadly construed by courts to prevent, as a matter of law, all "secondary lawsuits" which arise solely from communications or communicative acts related to any proceeding authorized by law. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1196-98.)

California courts hold that "[t]he absolute privilege under Civil Code section 47, subdivision (b), encompasses communications made to instigate an official investigation and in connection with the investigation once commenced." (*Lemke v. Sutter Roseville Med. Ctr.*, No. C078983, 2017 Cal. App. Unpub. LEXIS 933, *21 (Feb. 9, 2017), citing (*Hansen v. California Dept. of Corrections and Rehabilitation* (2008) 171 Cal.App.4th 1537, 1547, 90 Cal. Rptr. 3d 381); (*Bonni v. St. Joseph Health System*, 83 Cal.App.5th 288, 302 [298 Cal.Rptr.3d 730] (2022))

The purpose of the privilege is to "afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg*, 50 Cal. 3d at 213. Attorney Nsahlai's January 2025 letter falls squarely within the scope of Cal. Civ. Code § 47(b) because:

- It was made in furtherance of ongoing civil and criminal litigation, including *Doe v. Tapang*, No. 5:18-cv-07221 (N.D. Cal.), and was submitted amid a broader legal strategy authorized by the Cameroon Association of Victims of Ambazonia Terrorism (CAVAT). (See Nsahlai Decl. ¶¶ 4–6, 10–14; CAVAT Decl. ¶¶ 3–7; RJN, Exs. A–D.)

- It was directed exclusively to DHS, DOJ, and FBI—governmental bodies empowered to investigate national security and immigration violations. (See Nsahlai Decl. ¶¶ 11–13; RJN, Ex. C.)

- It was made in Attorney Nsahlai's capacity as counsel for victims of Ambazonian separatist violence. (See Nsahlai Decl. ¶ 3; CAVAT Decl. ¶¶ 2–4.)

- The statements were logically related to ongoing legal actions intended to halt terrorism, prosecute offenders, and trigger immigration enforcement, all of which are legitimate litigation objectives. (See Victims Nforsh and Betrand Decls.. ¶¶ 7–10; CAVAT Decl. ¶¶ 6–9.)

- The content concerned urgent public matters, including foreign-based terror threats to Cameroonian civilians and U.S. nationals. (See RJN, Exs. E–G.)

Tapang does not allege that the letter was sent outside of this context. The only alleged harm arises from the content of a legal memorandum addressed to federal authorities—a textbook example of a communication that §47(b) was designed to protect.

1

### 2. Cal. Civ. Code § 47(b)(5) Does Not Preclude Application of the Litigation Privilege

The California Supreme Court has made clear that the litigation privilege **applies to statements made to law enforcement officers and regulatory agencies**, even outside of a pending lawsuit, as long as they are connected to contemplated litigation or official investigations. *Hagberg*, 32 Cal. 4th at 364.

While Attorney Nsahlai concedes that Section 47(b) was revised in 2021 to state that a knowingly false report to a law enforcement agency, or a report made with reckless disregard of its truth or falsity is not privileged, that section does not preclude application of the litigation privilege. The facts before the Court soundly confirm that the assertions of Attorney Nsahlai in the letter are true and/or that Attorney Nsahlai had a reasonable belief that the facts asserted are true. Indeed, Attorney Nsahlai's letter fits precisely within this category—it was a formal, evidence-based submission seeking government enforcement and legal action against conduct implicating terrorism and immigration fraud, prepared in response to client requests, contained citations to prior civil complaints and official records. (See Nsahlai Decl. ¶¶ 12–15; CAVAT Decl. ¶¶ 6–10; RJN, Ex. G.)

Because the statements giving rise to Plaintiff's defamation claim were made (1) in the course of ongoing litigation, past litigation, and in anticipation of litigation, (2) by an attorney, (3) to appropriate government bodies, and (4) regarding matters closely related to legal and investigative proceedings, the litigation privilege applies in full. And, because the statements that were made were true and/or Attorney Nsahlai had reasonable belief that they were true, Cal. Civ. Code § 47(b) does not apply to remove the privilege. Accordingly, the privilege is mandates dismissal of the claim as a matter of law.

## D. THE NOERR-PENNINGTON DOCTRINE BARS TAPANG'S CLAIM OF DEFAMATION

Independent of California's anti-SLAPP statute and litigation privilege, Attorney Nsahlai's communication is constitutionally protected under the Noerr-Pennington doctrine, which immunizes petitioning activity from civil liability.

The *Noerr-Pennington* doctrine, rooted in the First Amendment, bars claims based on a defendant's good-faith petitioning of government agencies. Originally developed in antitrust, it now applies broadly to torts, including defamation. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929–31 (9th Cir. 2006); *Lucas v. Swanson & Dowdall*, 53 Cal. App. 4th 98 (1997).

California courts have further found that a report to an agency by a private individual with a request to act constitutes a "petition" for the purposes of the *Noerr-Pennington* Doctrine. See e.g., *Neurelis, Inc. v. Aquestive Therapeutics, Inc.*, 71 Cal.App.5th 769 [286 Cal.Rptr.3d 631] (2021) (report and request to FDA requesting it stay plaintiff's application was a petition.)

Petitioning is protected unless it is both (1) objectively baseless and (2) subjectively intended to harass. *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 526 (2002). Courts apply this doctrine to pre-litigation communications and agency submissions. *See Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049 (2009); *Neurelis, Inc.*, 71 Cal. App. 5th 769. The Ninth Circuit has emphasized that even controversial or harmful government-directed speech remains protected if aimed at prompting official action. *White v. Lee*, 227 F.3d 1214, 1227–28 (9th Cir. 2000).

Attorney Nsahlai's letter to DHS, DOJ, and FBI qualifies as protected petitioning because: It was based on was based on a well-documented evidentiary record consisting of: (1) audiovisual recordings of Tapang calling for kidnappings and extortion (See RJN, Ex. E; Nsahlai Decl. Ex. B); (2) public fundraising efforts for ADF military operations (See RJN, Ex. F; Nsahlai Decl. Ex. C); (3) social media posts by

-13-

1  Plaintiff promoting and defending attacks like the February 2024 Nkambe IED
2  bombing (See RJN, Ex. G; Victim Decl. ¶¶ 4–7); and (4) public admissions and
3  judicially noticeable litigation history acknowledging Plaintiff's role as ADF
4  spokesman and propagandist. (See RJN, Ex. D; CAVAT Decl. ¶¶ 6–9).

5      The letter was submitted in the context of an ongoing legal and advocacy
6  campaign initiated in 2017 by the Cameroon Association of Victims of Ambazonia
7  Terrorism (CAVAT), who authorized Attorney Nsahlai to file legal actions,
8  administrative petitions, and criminal reports against ADF operatives worldwide. (See
9  CAVAT Decl. ¶¶ 3–7; Nsahlai Decl. ¶¶ 4–6.). The letter sought the enforcement of
10 federal immigration and counterterrorism laws consistent with CAVAT's objectives
11 to prevent further violence and dismantle transnational terrorist networks (See
12 CAVAT Decl. ¶ 8–10; Nsahlai Decl. ¶ 12). Tapang's Complaint acknowledges the
13 existence of prior litigation and widespread public discourse concerning the ADF and
14 Tapang's role therein (See RJN, Ex. A, D).

15     Attorney Nsahlai's communication constitutes a well-supported, good-faith
16 petition to the government. Therefore, pursuant to the *Noerr-Pennington* doctrine,
17 Attorney Nsahlai is immune from civil liability for Tapang's claim of defamation.

18 **E. TAPANG'S CLAIM OF DEFAMATION CANNOT SUCCEED**
19 **BECAUSE THE ASSERTIONS IN THE LETTER REGARDING**
20 **TAPANG ARE SUBSTANTIALLY TRUE.**

21     To be actionable, defamation requires falsity. A statement is not defamatory if
22 it is substantially true—i.e., the 'gist' is accurate. See *Smith v. Maldonado*, 72 Cal.
23 App. 4th 637, 645 (1999); *Campanelli v. Regents*, 44 Cal. App. 4th 572, 581 (1996).
24 Indeed, substantial truth is "an absolute defense to any defamation claim." *Ryan v.
25 Editions Ltd. W., Inc*., No. C 06-04812 PSG, 2011 U.S. Dist. LEXIS 81917, at *9
26 (N.D. Cal. July 27, 2011) (granting anti-slapp motion on the basis that plaintiff could
27 not succeed on their claims because the statements were true)

28

Attorney Nsahlai's statements—alleging that Tapang incited violence, raised funds for terrorism, and committed immigration fraud—are grounded in video recordings, social media posts, and legal filings. (See RJN, Exs. E–H; Nsahlai Decl. ¶¶ 6, 12–13; Victims Nforsh and Betrand Decls. ¶¶ 5–7; CAVAT Decl. ¶¶ 4–7.)

Indeed, Tapang promoted separatist violence, coordinated fundraising on U.S. platforms for armed groups, and filed asylum documents that omitted this conduct. See 8 U.S.C. §§ 1158(b)(2)(A)(v), 1182(a)(3)(B), 1182(a)(6)(C). Verified discovery responses in prior litigation confirm he did not deny authorship of key posts. (See RJN, Ex. Y.) Accordingly, the challenged statements are substantially true, and cannot support Tapang's claim of defamation.

## F. THE ASSERTIONS CONTAINED IN THE LETTER CONSTITUTE NON-ACTIONABLE OPINION BASED ON DISCLOSED FACTS.

Even if this Court refuses to consider Attorney Nsahlai's statements as true at this stage of the litigation, Attorney Nsahlai's statements remain non-actionable opinions grounded on disclosed facts, and as such, cannot support a claim for defamation. Indeed, opinions based on verifiable evidence are protected.

"It is an essential element of defamation that the publication be of a false statement of fact rather than opinion." *Garcia v. Hernandez*, No. SACV 23-00946-CJC (JDEx), 2023 U.S. Dist. LEXIS 167753, *10-11 (C.D. Cal. Sep. 19, 2023), citing *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 385, 10 Cal. Rptr. 3d 429 (2004) ("[T]he dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.") Statements may be statements of opinion, even if they contain allegations as to criminal conduct. *See Garcia*, 2023 U.S. Dist. LEXIS 167753, *11 (C.D. Cal. Sep. 19, 2023) (abuse and human trafficking statements non-actionable opinion). See also, *Milkovich v. Lorain Journal*, 497 U.S. 1 (1990); *Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995); *White v. Lee*, 227 F.3d 1214, 1227–28 (9th Cir. 2000).

1    While California decisions are scant on whether the term "terrorist," can be

2    construed as a non-actionable opinion, The Court of Appeals for the Second Circuit

3    dealt with a very similar factual scenario in *Miller v. James*, No. 24-2785, 2025 U.S.

4    App. LEXIS 8329 (2d Cir. Apr. 9, 2025). There, New York State Attorney General

5    called a group and its members – Red Rose Rescue "terrorists."

7        At this press conference, James described Red Rose Rescue
8        activists as having "terrorized patients" during incidents in
9        which they unlawfully entered or blocked access to three
10       separate health care facilities. She then stated, "[I]t is my
11       duty and my honor and my responsibility to keep
12       individuals safe from terrorists. And that's what they are."
13       Later in the press conference, however, James responded to
14       a question by saying, "They haven't been designated as
15       such. I refer to them as terrorists because of their activities."
16       In response to another question, she said "This will apply to
17       this terrorist group."

15   The *Miller* court reasoned that in that context, calling these individuals terrorists

16   was a non-actionable opinion. *See also, LeBlanc v. Skinner*, 2012 NY Slip Op 8494,

17   6, 103 A.D.3d 202, 213, 955 N.Y.S.2d 391, 400 (App. Div. 2nd Dept.) ("falsity

18   remains a necessary element in a defamation claim and, accordingly, 'only statements

19   alleging facts can properly be the subject of a defamation action…' 'Within this ambit,

20   the Supreme Court correctly determined that the accusation on the newspaper site that

21   the plaintiff was a "terrorist" was not actionable.'"); *Basulto v. Netflix, Inc*., No. 1:22-

22   cv-21796 MORE, 2023 U.S. Dist. LEXIS 167374, *95 (S.D. Fla. Sep. 20, 2023) ("In

23   context, which is key, Olga's 'terrorist' comment is akin to calling someone a 'fascist'

24   or a 'traitor.' The word is 'neither precise nor readily understood.'")

25       Tapang's own conduct and statements—livestreams, posts, and public

26   affiliations—serve as the basis for Defendant's legal characterizations, including

27   terms like 'terrorist' or 'fraud'. (See RJN, Exs. E–I; Nsahlai Decl. ¶¶ 11–13; CAVAT

-16-

Decl. ¶¶ 6–10.) Beyond the fact that Attorney Nsahlai's communications were made to law enforcement in a legal context and are constitutionally protected, indicating that someone is a terrorist in this context – and supported by the factual record before Attorney Nsahlai – is non-actionable opinion not subject to liability for defamation

### G. TAPANG CANNOT SUCCEED ON HIS CLAIM OF DEFAMATION BECAUSE HE IS A LIMITED PURPOSE PUBLIC FIGURE WHO CANNOT ESTABLISH ACTUAL MALICE

Plaintiff has voluntarily placed himself at the center of the Ambazonia conflict. This renders him a limited purpose public figure who must establish the element of malice to succeed on his claim of defamation.

Indeed, a "limited purpose" or "vortex" public figure, [is] an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 253, 208 Cal. Rptr. 137, 142, 690 P.2d 610, 615 (1984). "Public figures" -- like public officials -- must prove actual malice in order to recover in a defamation action. *Id*.

To prove actual malice, a plaintiff must show that it will be able to provide clear and convincing evidence that statements were made with "knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Billauer v. Escobar-Eck*, 88 Cal. App. 5th 953, 978, 305 Cal. Rptr. 3d 273, 295 (2023). "The clear and convincing standard requires that the evidence be such as to command the unhesitating assent of every reasonable mind." *Annette F*., 119 Cal. App. 4th 1146, 1167, 15 Cal. Rptr. 3d 100, 114 (2004). Courts will not infer "actual malice solely from evidence of ill will, personal spite or bad motive." *Edward v. Ellis*, 72 Cal. App. 5th 780, 793, 287 Cal. Rptr. 3d 467, 476-477 (2021).

Tapang publicly identified as an ADF leader and fundraiser, targeting global audiences. (See RJN, Exs. D, F–I; Nsahlai Decl. ¶¶ 6, 12–13; CAVAT Decl. ¶¶ 5–9.) Attorney Nsahlai, on the other hand, acted in good faith, submitting evidence-backed concerns to DHS, DOJ, and FBI. See *Makaeff v. Trump Univ.*, 715 F.3d 254, 271 (9th Cir. 2013). Plaintiff has not and cannot allege malice.

## H. TAPANG CANNOT SUCCEED ON HIS CLAIM OF DEFAMATION BECAUSE NO ACTIONABLE PUBLICATION OCCURRED .

Tapang's claim of defamation fails for lack of publication. Under California law, a defamatory statement must be communicated to an unprivileged third party with foreseeable reputational harm. See *Shively v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003). Attorney Nsahlai's January 2025 letter was directed to DHS, DOJ, and FBI, as part of confidential legal advocacy involving ongoing proceedings. (See Nsahlai Decl. ¶¶ 11–13; RJN, Ex. C; CAVAT Decl. ¶¶ 9–10.)

Communications to law enforcement, clients, or in private civic forums are not publication. *Kelly v. General Tel. Co.*, 136 Cal. App. 3d 278, 285 (1982). Attorney Nsahlai is not liable for third-party republication that are publicized without authorization. See *Schneider v. United Airlines*, 208 Cal. App. 3d 71, 75 (1989); *Drysen v. Chevron*, 2011 WL 4595276, at *4 (N.D. Cal.).

The letter was submitted as part of ongoing litigation (*Doe v. Tapang*, *CAVAT v. Ambazonia Foundation*), to agencies with enforcement authority, and shared with clients and in limited, non-public forums. (See Nsahlai Decl. ¶¶ 11–13; RJN, Exs. A, D; CAVAT Decl. ¶¶ 3–9.) Attorney Nsahlai's letter was directed at authorities, shared privately, and made in protected legal advocacy. Tapang alleges no facts showing Attorney Nsahlai encouraged broader distribution of the letter. Accordingly, no actionable publication occurred, and the absence of unprivileged

publication warrants dismissal under California law, the Anti-SLAPP statute, and Rule 12(b)(6).

## I. THE COURT MUST AWARD ATTORNEY NSAHLAI HIS COSTS IF HE PREVAILS ON HIS ANTI-SLAPP MOTION

California Code of Civil Procedure §425.16(c) provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. Proc. §425.16(c); see also *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d at 983.

## J. TAPANG FAILS TO STATE A CLAIM UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Even assuming the allegations in the Complaint have merit (which they do not), Tapang's defamation claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Tapang has failed to allege facts sufficient to state a plausible claim for defamation.

For the purposes of Attorney Nsahlai's Motion to Dismiss, he incorporates the above arguments, each of which render Tapang's Complaint insufficient pursuant to Civil Rule 12(b)(6).

But beyond these insufficiencies, the Complaint is devoid of factual content supporting several essential elements and relies instead on vague conclusions and generalized grievances—precisely the kind of pleading the Supreme Court has rejected.

### 1. Tapang's Complaint is Deficient Because Tapang Fails to Identify A False Statement of Fact Made by Attorney Nsahlai.

Tapang **does not identify a single demonstrably false assertion**—only subjective disagreement with Defendant's characterization of his conduct. Tapang does not deny his affiliation with the ADF, his public statements advocating violence,

his solicitations of funds via U.S. platforms, the existence of video or social media evidence tying him to these actions.  Instead, the Complaint offers broad denials and conclusory allegations of reputational harm—insufficient under *Iqbal* and *Twombly*.

### 2. Tapang's Complaint is Deficient Because It Does Not Sufficiently Allege that Attorney Nsahlai Published a False Statement of Fact to Anyone Other Than The U.S. Government.

Attorney Nsahlai's was directed only to U.S. government agencies. (See Nsahlai Decl. ¶¶ 11–13; RJN, Ex. C; CAVAT Decl. ¶¶ 9–10.) Even assuming it reached others (e.g., via government staff or client awareness),  **is nothing but a single bare-bones allegation that Attorney Nsahlai caused or authorized any such republication**. Tapang sets forth no facts indicating how Attorney Nsahlai published this letter to anyone other than the U.S. government. Tapang alleges no facts showing Attorney Nsahlai encouraged broader distribution of the letter. Tapang's failure to properly allege publication defeats the essential element of publication, and precludes Tapang from succeeding on his claim of defamation. See *Schneider v. United Airlines*, 208 Cal. App. 3d 71, 75 (1989).

### 3. Tapang's Complaint is Deficient Because It Alleges No Facts Establishing That Attorney Nsahlai Knew the Statements In The Letter Were False or Exhibited Reckless Disregard of Their Truth or Falsity.

As discussed, Tapang is a limited-purpose public figure due to his voluntary injection into public controversies (e.g., immigration policy, fundraising for contentious causes). *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Yet the Complaint: (1) contains no facts suggesting Tapang knew the statements were false or acted with reckless disregard for the truth; and (2) ignores that Attorney Nsahlai relied on documented evidence, negating any inference of malice.

1    Because Tapang is a limited-purpose public figure, he must allege facts

2    demonstrating actual malice. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

3    Yet the Complaint contains no allegations—let alone plausible facts—indicating that

4    Attorney Nsahlai acted with knowledge of falsity or reckless disregard for the truth.

5    *Iqbal*, 556 U.S. at 678.

6    **4. Tapang's Complaint is Deficient Because It Alleges No Facts**

7    **Establishing Damages.**

8    Tapang does not identify any concrete reputational harm, economic loss, or

9    emotional distress causally connected to the letter. There is no showing of actual

10   damages or any facts supporting presumed damages. Mere discomfort with criticism

11   or exposure is not actionable. *Barker v. Fox & Assocs.*, 240 Cal. App. 4th 333, 350

12   (2015).

13   **5. Tapang's Complaint is Deficient Because It Is a Conclusory**

14   **Shotgun Pleading.**

15   Tapang claim rests on labels and conclusions, not facts. Tapang alleges

16   Attorney Nsahlai called him a "terrorist" and accused him of "fraud," but these

17   are rhetorical hyperbole or non-actionable opinions, the truthful basis for Attorney

18   Nsahlai's statements defeats falsity; and the privileged context (petitioning

19   government) bars liability. Under *Iqbal* and *Twombly*, such speculative, conclusory

20   allegations cannot survive dismissal. Tapang recites vague grievances without

21   alleging specific facts that plausibly suggest entitlement to relief. The entire claim

22   rests on the assertion that Attorney Nsahlai called him a "terrorist" and accused him

23   of "immigration fraud"—statements that, as shown, are protected by truth, opinion,

24   privilege, and the First Amendment. Under *Iqbal* and *Twombly*, the claim cannot

25   proceed based on speculation or conclusory labeling.

26

27

28

Because Tapang has failed to plead falsity, publication, fault, or damages with the requisite specificity, the Complaint is legally deficient and must be dismissed in its entirety pursuant to Rule 12(b)(6).

## XI.     CONCLUSION

Tapang's Complaint is a textbook example of a retaliatory and legally meritless action designed to suppress protected legal advocacy, burden Attorney Nsahlai with litigation costs, and chill future petitioning to law enforcement authorities. The communication at issue—a single paragraph in a privileged, confidential letter submitted to federal agencies—was made in the context of ongoing litigation, supported by extensive public evidence, and directed toward matters of grave public concern, including terrorism, immigration fraud, and threats to national security.

Each of Tapang's defamation allegations is independently barred by one or more dispositive defenses: the anti-SLAPP statute, the litigation privilege, the Noerr-Pennington doctrine, the truth of the statements, their status as protected opinion, and Tapang's failure to allege essential elements such as publication, actual malice, and damages.

Accordingly, Attorney Nsahlai respectfully requests that this Court enter an order:

1. GRANTING  Attorney Nsahlai's Special Motion to Strike under California Code of Civil Procedure §425.16;

2. In the alternative, GRANTING Attorney Nsahlai's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice;

3. AWARDING Attorney Nsahlai his reasonable attorneys' fees and costs incurred in bringing the anti-SLAPP motion, as mandated by Cal. Code Civ. Proc. § 425.16(c); and

1      4.  GRANTING such other and further relief as the Court deems just and proper.

2

3   Date: April 25, 2025                    Respectfully Submitted,

4

5

6                                    By: /s/ *Jed Chedid, Esq.*
                                         **Jed Chedid, Esq. (Ohio Bar No. 101457)**
7                                        (Admitted *Pro Hac Vice*)
                                         **Chedid & Co., LLC**
8                                        38355 Terrell Dr.
9                                        North Ridgeville, Ohio, 44039
                                         Phone: (440) 581-2075
10                                       jchedid@chedidlegal.com
11
                                         *Attorney for Defendant*
12
13                                       **NSAHLAI LAW FIRM**
                                         **EMMANUEL NSAHLAI,** SBN (207588)
14                                       email: nsahlai.e@nsahlailawfirm.com
15                                       10490 WILSHIRE BLVD, STE 1600
                                         LOS ANGELES, CA 90024
16                                       Tel (213) 797-0369
                                         Fax (213) 973-4617
17

18

19

20

21

22

23

24

25

26

27

28

-23-

1
2

## **<u>CERTIFICATE OF SERVICE</u>**

3
4

I HEREBY CERTIFY that on April 25, 2025, I directed that the foregoing

5

document be electronically filed with the Clerk of the Court by using the CM/ECF

6

system.

7
8
9
10

By:/S/ *Jed Chedid, Esq.*

11

Jed Chedid, Esq.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28