J. CURTIS EDMONDSON (SBN 236105)
Law Offices of J. Curtis Edmondson
Beaverton Plaza Building
3720 SW 141st Avenue, Suite 212
Beaverton, OR 97005
Phone: (503) 336-3749
Email: jcedmondson@edmolaw.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

IVO TANKU TAPANG,

                    Plaintiff,

v.

EMMANUEL NSAHLAI,

                    Defendant.

Case No.: **2:25-cv-01794-SSC**
Hon. Stephanie S. Christensen

Hearing Date: June 24, 2025
Hearing Time: 1:30 p.m
Hearing via Zoom

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**TABLE OF CONTENTS**

**I.     INTRODUCTION**…………………………………………………..……...1

**II.    SUMMARY**…………………………………………………………….....2

**III.   ARGUMENT IN OPPOSITION**………….. .……………………………….…3

      **A.    THE DEFAMATORY LETTER**…………………………………….…3

      **B.    CALIFORNIA DEFAMATION LAW** ……………………………………3

      **C.    EXTRINSIC EVIDENCE CANNOT BE CONSIDERED ON A
          MOTION TO DISMISS** ……………………………………………...4

      **D**.    **NSAHLAI'S IMPROPERLY EVIDENTIARY REDACTIONS** …………………..…6

      **E.    NSAHLAI'S ARGUMENTS SHOULD BE DENIED IN THEIR ENTIRETY** …..……....6

          **1.    NSHALAI'S SLAPP ARGUMENTS SHOULD BE DENIED AS THEY FAIL
              BOTH PRONGS OF THE SLAPP TWO-PART TEST (MOTION
              A, B, I)** ……………………………………………..……..6

              a.   The First Prong is Not Satisfied Under Gazal as Nsahlai
                  has Taken the Position that the Core-Injury Producing
                  Conduct was Not Public ……………………………………….7

              b.   The Second Prong is Not Satisfied as Tapang has Shifted
                  the Burden of Proof that He is Not a "Terrorist" by
                  Nsahlai's Three Failed Lawsuits ……………………………8

              c.   Nsahlai Fails the First Prong of the Anti-SLAPP statute
                  But Tapang has Shown that There is Evidence to Support
                  His Defamation Claim ………………………………………8

          **2.    NSHALAI'S FEDERAL ARGUMENTS SHOULD BE DISREGARDED
              (PART A, D, J)** ……………………………………….……….…9

          **3.    NSHALAI'S STATE LAW DEFAMATION PRIVILEGE ARGUMENTS
              SHOULD BE DENIED (MOTION PARTS C, E, F, G, H)** …………..……..10

              a.   The Defense of the Litigation Privilege (Part C) Must be Denied
                  as Civ. Code 47(b)(5) No Longer Provides for That
                  Privilege ……………………………………………………10

b.  The Defense of Truth (Part D) and Opinion (Part F) is a
Triable Issue of Fact Not Submit to Adjudication at the Motion
to Dismiss Stage……………………………………………………….11

c.  Limited Public Figure (Part G) is a Triable Issue
of Fact.………………………………………………………………….11

d.  The Defense of "No Publication" (Part H) …………………………11

IV.    **LEAVE TO AMEND SHOULD BE GRANTED IF THE
ALLEGATIONS ARE INSUFFICIENT** …………………………………………....12

V.    **CONCLUSION** ………………………………………………………………… 12

**TABLE OF AUTHORITIES**

<u>CASES:</u>

*Ashcroft v. Iqbal* (2009) 556 U.S. 662 …………………………………………………………11

*Barker v. Fox & Assocs* (2015) 240 Cal.App.4th 333, 350 ………………………….………11

*Bassi v. Bassi* (2024) 101 Cal.App.5th 1080, 1094 ………………………………………………10

*Bell Atlantic Corp, et al. v. Twombly, et al.* (2007) 500 U.S. 544 …………………………..…11

*Blatt v. Pambakian* (C.D. Cal. 2020) 432 F. Supp.3d 1141, ___ ………………………….......7

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,*
      (1961) 365 U.S. 127, 135 ………………………………………………………………10

*Flowers v. Carville* (9th Cir. 2002) 310 F.3d 1118, fn 8 ………………………………..…10

*Gazal v. Echeverry* (Cal.App. 2024) 101 Cal.App.5th 34, 40 …………………………………...8

*Gonzalez v. Google LLC(9th Cir. 2021) 2 F.4th 871* …………………………………………..2

*Herring Networks, Inc. v. Maddow* (9th Cir. 2021) 8 F.4th 1148, 155…..…..………………..7

*Hilton v. Hallmark Cards, (9th Cir. 2010) 599 F.3d 894, 906*………………………………….3

*Implicit Conversions, Inc. v. Stine* (N.D. Cal. Jan 30, 2025) 24-CV-03744-WHO p. 10 ………5

*In re Kowalsky (Cal. 1887) 73 Cal.120*..…………………………..………………………….......4

*Johnson v. Fed. Home Loan Mortg. Corp.* (9th Cir. 2015) 793 F.3d 1005…………………..5, 6

*Makaeff v. Trump Univ., LLC* (9th Cir. 2013) 715 F.3d 254, 261 …………………………...7

*Metabolife Intern., Inc. v. Wornick,* 264 F.3d 832, 839-40 (9th Cir. 2001) ……………………..3

*Miller v. Sawant* (9th Cir. 2021) 18 F.4th 328, fn. 9 …………………………………...……10

*Mindys Cosmetics, Inc. v. Dakar* (9th Cir. 2010) 611 F.3d 590, 599 ……………………………9

*Schneider v. United Airlines, Inc.* (Cal. App. 1989) 208 Cal.App.3d 71 ………………….8, 9, 11

*United Mine Workers v. Pennington,* 381 U.S. 657, 670 (1965).………………………………10

STATUTES:

Anti-Terrorism Act (ATA), 18 U.S.C. § 2333 ……………………………………….……2

Business and Professions Code § 17510 …………………………………………………..9

Civil Code § 45 ……………………………………………………………………………5

Civil Code § 46 ……………………………………………………………………………5

Civil Code § 47 ……………………………………………………………………………5

Code Civil Procedure § 47(b)(5) …..………………………………………………………3, 5

Code Civ Proc. 425.16(b)(1) ………………………………………………………………7

FRCP 5.2 …………………………………………………………………………………..6

FRCP 12(b)(6) ……………………………………………………………………………..3, 5

Government Code §§ 12581, 12582, 12582.1, 12583, 12586(a), 12599(a), 12599.1(a) ……….9

OTHER SOURCES:

Local Rule 5.2-1 …………………………………………………………….……..6, 7

https://en.wikipedia.org/wiki/The_Boy_Who_Cried_Wolf………………………..….……….. 2

I.      **<u>INTRODUCTION</u>**

One of Aesop's most popular fables is the "The Boy who Cried Wolf"[1]. The story is well known about a child who likes to play games, but the end result is the loss of the town's sheep.

Like the boy shepherd, three times Nsahlai has claimed that Tapang is "… *a terrorist*…." Nsahlai failed three times and was court sanctioned twice. Again, like the shepherd, Nsahlai now wants this Court to come to his aid. Like the townspeople in Aesop's fable, this Court should now refuse to come to Nsahlai's aid.

Accusing a person of being a terrorist is not a trivial matter. Congress acknowledged this when it passed the Anti-Terrorism Act (ATA). 18 U.S.C. § 2333; *Gonzalez v. Google LLC* (9th Cir. 2021) 2 F.4th 871. The publication and re-publication of such a statement causes serious harm to future job prospects, business dealings in the community, and reputation in the community. Tapang worked hard to obtain his doctorate, he should not have to suffer when someone "google's" his name prior to a job interview.

Nsahlai's letter in January was vindictive and harassing. It was obviously not intended to be an accurate "report" to the police. It had one goal: get Tapang deported on false allegations[2]. Deportation to the Cameroons is effectively a death sentence for Tapang. Whether Nsahlai's motivation is his revengeful *idee fixe* or an act sponsored by third parties is irrelevant under California's defamation law. Nsahlai published the letter calling Tapang a terrorist. California law has remedies for such acts and Nsahlai's Motion should be denied.

---

[1]   See https://en.wikipedia.org/wiki/The_Boy_Who_Cried_Wolf.

[2] Tapang is in the country legally and has children born in the United States.

**OPPOSITION TO MOTION TO DISMISS**                                         **Page 1**

1

## II.    SUMMARY

2

3    Nashlai's Motion (ECF 12) fails because Tapang adequate pled that Nsahlai

4    communicated claims of Tapang being a terrorist to a third party, that the claims

5    were made with malice, given the prior two sanctions orders against him, and there

6    is no privilege under California law for false reports made to law enforcement.

     C.C.P. § 47(b)(5).

7    Nsahlai's Anti-SLAPP arguments are without merit and fail the two-prong

8    test.  On the first prong, the civil war in the Cameroons, while tragic, is not a topic

9    of "widespread public interest," and not a protected activity.  *Hilton v. Hallmark*

10   *Cards* (9th Cir. 2010) 599 F.3d 894, 906.  If this first prong is not met, Tapang

11   need not show that he will likely prevail on his defamation claim. If the first prong

12   is met, under *Hilton*, Tapang need only show his claims have minimal merit. *Id*. at

13   908.

14   Nashlai's FRPC 12(b)(6) Motion also fails procedurally. Nsahlai introduces

15   volumes of irrelevant and anecdotal "evidence" in support of his Motion (See

16   generally  declaration;  ECF 12, exhibits ECF 13, etc. and Tapang's Objections

17   filed hereto). All of this extraneous evidence should be disregarded in its entirety.

18   The anti-SLAPP statute was enacted to allow early dismissal of meritless first

19   amendment cases aimed at chilling expression through costly, time-consuming

20   litigation (*Metabolife Intern., Inc. v. Wornick,* 264 F. 3d 832, 839-840 (9th Cir.

21   2001). Tapang's case has merit as is evidenced by Nsahlai's three failed terrorist

22   lawsuits.

23

24

25

26

**OPPOSITION TO MOTION TO DISMISS**                                    **Page 2**

1

2

III.    **ARGUMENT IN OPPOSITION**

3

   A. <u>**The Defamatory Letter**</u>

4

      Nsahlai's defamatory seven-page letter (See, Complaint, ECF 1, Ex. 1) is

5

not disputed by Nsahlai. (See, Motion, Part E, pp. 20, letter was "substantially

6

true").   Nor   does Nsahlai dispute it was circulated on social media in redacted

7

form. *Id.* at 7.  The second page of Nsahlai's letter calls out "**Specific Individuals**

8

**of Concern**":  Tapang Ivo Tanku, Eric Tano Tataw, and John Mbah Akuro.  *Id*. at

9

8.   In this section, Nsahlai stated that Tapang:

10

   - Incite[d] Violence
   - Solcit[ed] funds for terrorist activities
   - Recruited supporters

11

12

      More generally, Nsahlai claims that Tapang committed immigration fraud.

13

By inference that Tapang is part of the "PART. I" individuals, Nsahlai has also

14

claimed that Tapang has established an NGO and defrauded Americans of millions

15

of dollars.  *Id.* at 10.

16

      This letter was thereafter circulated on social media. (*Id.* Ex 4,5, pp. 27-

17

32).

18

   B. <u>**California Defamation Law**</u>

19

      Defamation is best summarized in one of the early California's Supreme

20

Court cases as:

21

   "…A libel is a malicious defamation, expressed either by writing,
   printing, or by signs or pictures, or the like, tending to blacken the
   memory of one who is dead, or to impeach the honesty, integrity, virtue,
   or reputation .... of one who is alive, and thereby to expose him to public
   hatred, contempt, or ridicule…"  *In re Kowalsky* (Cal. 1887) 73 Cal.
   120.

22

23

24

25

26

**OPPOSITION TO MOTION TO DISMISS**                                                                  **Page 3**

1

2

3

4

5

Defamation in a publication is actionable at common law and under Civil Code §45 as libel and Civil Code §46 a slander.  Tapang has alleged all elements of Civil Codes §45 and §46 and publicizing that a person is a "terrorist" is libel on its face. Nsahlai does not dispute the letter was sent to a third-party naming Tapang a terrorist.

6

7

8

9

10

11

Defamation has statutory exceptions under privilege. Civil Code § 47.  But there are exceptions to the exceptions. Civil Code § 47(b)(5).  The burden rests on Nsahlai to demonstrate those exceptions at trial.  See *Implicit Conversions, Inc. v. Stine* (N.D. Cal. Jan 30, 2025) 24-CV-03744-WHO pp. 10 ("*The true nature of the motivation behind Lavallee's call will be revealed in the course of discovery and trial,*" denying the Civil Code § 47 privilege at the FRCP 12(b)(6) stage.)

12

13

## C. <u>Extrinsic Evidence Cannot be Considered on a Motion to Dismiss.</u>

14

15

16

17

18

19

20

21

22

23

The Court usually should not consider extrinsic evidence beyond what is attached to the complaint on a motion to dismiss and the allegations of the complaint are accepted as true. *Johnson v. Fed. Home Loan Mortg. Corp.* (9th Cir. 2015) 793 F.3d 1005 *"…Although as a general rule we may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.….."* Tapang has attached to his Complaint the following exhibits: Ex. 1 (Letter from Emmanuel Nsahlai dated January 2025, Ex. 2-3 (Sanctions Award), Ex. 4 (blog post repeating the allegations of Ex. 1), Ex. 5 (Sun article citing Tapang's name), and Ex. 6 (SOS registration for CAVAT).  Ex. 2, 3, and 6 are judicially noticeable. Ex. 1, 4, 5 are exhibits supporting the re-publication of contents of Nsahlai's letter that was purportedly only sent to law enforcement.

24

25

26

Nsahlai's Motion contains numerous documents (see generally ECF 13, 13-1, 13-2…) that cannot be considered on a Motion to Dismiss. Nsahlai's argument that "…*Tapang is a terrorist*…" (see ECF 12, p 14, stating the letter is

**OPPOSITION TO MOTION TO DISMISS**                                      **Page 4**

'substantially true' and arguing truth as a defense) is not appropriate at this stage of the litigation.

Further, the Court cannot consider extrinsic factual declarations by the defendant. *Johnson*, *supra*. Even if the statements are factual, they are mostly pure hearsay and lacking foundation, and frankly irrelevant to Tapang's claim of defamation which Nsahlai has publicized that Tapang is a terrorist:

- ECF 12-2 – Nsahlai's "personal declaration" of "facts" derived from "discussions with his uncles" is pure hearsay.
- ECF 12-3 – Ngassa's declaration, like Nsahlai, lacks foundation and is full of hearsay, not withstanding, it is largely inadmissible opinion testimony of how he characterizes ADF.
- ECF 12-4 – Nforshi's declaration – relevancy, opinion, hearsay, lack of foundation.
- ECF 12-5 – Betrand's declaration – relevancy, opinion, hearsay, lack of foundation.
- ECF 13-1, 13-2 onwards – See Tapang's Evidentiary Objections.

To the extent that Mssrs. Nsahlai, Ngassa, Nforshi, and Betrand have admissible evidence, that evidence can be presented at trial or on summary judgment.  To the extent this Court decides to consider extrinsic evidence on the Motion, converting it to summary judgment, objections to the evidence and Plaintiff's declarations as referenced above.

Further, Tapang should be provided copies of all unredacted copies of Nsahlai's evidence (ECF 13.2 and 13.8) as requested since the redactions do not fall within the acceptable pieces of information that may be redacted under FRCP 5.2 and/or L.R. 5.2-1.

**OPPOSITION TO MOTION TO DISMISS**                                        **Page 5**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### D. Nsahlai's Improper Evidentiary Redactions

The rules of this Court only allow for redactions in limited circumstances. (L.R. 5.2-1). Nsahlai improperly redacts evidence (including witness information) in his exhibits in support of his Motion. Since Tapang has filed herewith Objections to Redacted Evidence, this argument is not repeated here.

### E. Nshalai's Arguments Should be Denied in Their Entirety

Nsahlai presents ten arguments involving federal, state, and Anti-SLAPP claims. (Motion, A-H). Tapang has grouped his arguments in opposition to these categories below.

#### 1. Nsahlai's anti-SLAPP Arguments Should be Denied as Both Prongs of the anti-SLAPP Two-Part Test Fail (Motion A, B, I)

Cal. Code Civ. Proc. § 425.16(b)(1)) allows for pre-trial dismissal of claims under a two-step process. *Herring Networks, Inc. v. Maddow*, (9th Cir. 2021) 8 F.4th 1148, 1155 (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). First, the moving defendant must make a threshold showing that the challenged claims arise from protected activity. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). If the defendant meets this threshold, "[t]he burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Id.* Tapang's defamation claim can only be stricken if <u>both</u> prongs of the anti-SLAPP statute are met. See *Blatt v. Pambakian* (C.D. Cal. 2020) 432 F.Supp.3d 1141, 1164.

### a. The First Prong is Not Satisfied Under *Gazal* as Nsahlai has Taken the Position that the Core-injury Producing Conduct was Not Public

On the first prong, Nsahlai has the burden of proof that his letter arose from "protected activity". *Gazal v. Echeverry* (Cal. App. 2024)  101 Cal.App.5th 34, 40. *Gazal* is instructive.  In *Gazal,* a deacon implored in his homily a request for a large donation for a destitute family.  A parishioner was inspired and later sued for fraud when the church could not produce an accounting for the funds. The defendant invoked the anti-SLAPP defense and lost.  *Id.* at 37.  The court held that:

> "core injury-producing conduct upon which the plaintiff's claim is premised" did not rest on protected speech, but rather on "conduct and speech that was private ... and not directed at a wide public audience"; and that "the causes of action arose from further communications" that took place in the weeks after the homily."

Nsahlai's took this position in his brief:

> "…Attorney Nsahlai's January 2025 letter was directed to DHS, DOJ, and FBI, as part of **confidential legal advocacy** involving ongoing proceedings…." (Motion at 18, ln 11-13)

Nsahlai's is estopped under *Gazal* from taking a different position in this case.

While Nsahlai claims limited distribution, limited distribution does not snuff out Tapang's defamation claim if the reasonable expectation is re-publication by third parties. *Schneider v. United Airlines, Inc. (*Cal. App. 1989) 208 Cal.App.3d 71, 75 " *...The person defamed suffers injury each time the defamatory matter is published (or republished) and therefore a separate cause of action accrues for each publication...*" Defamation is actionable when the defamatory

OPPOSITION TO MOTION TO DISMISS                                                    **Page 7**

Case 2:25-cv-01794-SSC    Document 15    Filed 05/27/25    Page 13 of 17    Page ID
#:802

statement is made to third parties and there is no dispute that his letter was widely

broadcasted.  Even Nsahlai admits sharing the letter with "clients" and "non-public

forum" *Id*. at line 11-13.


### b. The Second Prong is not satisfied as Tapang has Adequately Alleged that He is Not a "Terrorist" by Nsahlai's Three Failed Lawsuits

Tapang satisfies the "second prong" of the anti-SLAPP analysis if Tapang

can show that his claim has minimal merit. *Mindys Cosmetics, Inc. v. Dakar* (9th

Cir. 2010) 611 F.3d 590, 599 "….is much like that used in determining a motion

for nonsuit or directed verdict, which mandates dismissal when no reasonable jury

could find for the plaintiff ..."

Here, without the benefit of further discovery, Tapang will show the three

prior failed lawsuits were orchestrated by Nsahlai.  Two of the lawsuits resulted in

sanctions against Nsahlai, and one suit was filed on behalf of a "charity" organized

by Nsahlai (CAVAT) that purportedly raises charitable money[3].  This evidence

alone could convince a jury that Nsahlai's January 2025 letter was defamatory *per

se*.


### c. Nsahlai Fails The First Prong of the Anti-SLAPP Statute but Tapang has Shown that There is Evidence to Support His Defamation Claim

To prevail, Nsahlai must meet the first prong and if so, Tapang must fail to

show that his claim has no merit—both must be satisfied to support a dismissal

under the anti-SLAPP analysis. *Bassi v. Bassi* (2024) 101 Cal. App. 5th 1080,

---

[3] California charities are heavily regulated.  CAVAT has failed to register with California or file audited financial statements. (Government Code sections 12581, 12582, 12582.1, 12583, 12586(a), 12599(a), 12599.1(a); Business and Professions Code section 17510.)

**OPPOSITION TO MOTION TO DISMISS**                                        **Page 8**

1094. Here, however, Nsahlai has not satisfied his first prong, so the burden never

shifts to Tapang.  The Motion should be denied.

### 2.  Nsahlai's Federal Arguments Should be Disregarded (Part A, D, J)

Nsahlai raises federal arguments under *Noerr-Pennington*[4] and *Twombly
Iqbal* in his Motion.

Nsahlai argues that *Noerr-Pennington* (ECF 12, Part D, pp. 13-14) applies
(Argument "D") to his protected petitioning activity (Part Argument "A.") *Noerr-
Pennington* as a defense is inapplicable in the Ninth Circuit for defamation claims.
*Flowers v. Carville* (9th Cir. 2002) 310 F.3d 1118, fn. 8;  followed by *Miller v.
Sawant* (9th Cir. 2021) 18 F.4th 328, fn. 9.

In his Motion, Nsahlai failed to cite the precedent of *Flowers* and *Miller*,
but assuming *DirectTV* is applicable, Nsahlai's primary arguments regarding
"CAVAT" lacks merit as this matter has been adjudicated with sanctions imposed
on Nsahlai. (MOPA, pp. 14, ln-5-14); see Complaint, Ex. 3. Nsahlai's letter to
various federal and state agencies therefore falls within the sham litigation
exception of *Noerr-Pennington.*

Nsahlai also argues that Tapang's Complaint fails to state a claim under
*Twombly/Iqbal* (Part J) and should be dismissed under Rule 12(b)(6). (See, Motion,
pp. 19, Part J).  Nsahlai's letter is defamatory on its face.  It states that Tapang is
involved in terrorism and immigration fraud. Truth of defamation is an <u>affirmative
defense</u> for which Nsahlai carries the burden of proof. Nsahlai's citation to
*Schneider v. United Airlines, Inc. (*Cal. App. 1989) 208 Cal.App.3d 71, is helpful
for Tapang, to the extent that this case was not published for the legal issue of the
statute of limitations.  The *Schneider* court did affirm the general rule "…As noted

---

[4]  The *Noerr-Pennington* doctrine is based on *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.* (1961) 365 U.S. 127, 135) *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965).

**OPPOSITION TO MOTION TO DISMISS**                                          **Page 9**

above, where re-publication reaches a new entity or person, repetition justifies a new cause of action…." *Id*. 75. To the extent that Nsahlai argues he did not authorize the re-publication, this is a question of fact not subject to a motion to dismiss.

Nsahlai also argues that under *Twombly/Iqbal*[5] comparing it to two private e-mails that were the basis for a defamation lawsuit in *Barker v. Fox & Assocs.* (2015) 240 Cal.App.4th 333, 350.   Tapang has sufficiently pled and shown evidence that Nsahlai's letter was communicated widely in a public forum.  This is not a situation where the DHS received the letter, then called up Tapang to discuss (similar to *Barker*), rather this is an issue of defamation *per se.*

### 3.  Nsahlai's State Law  Defamation Privilege Arguments Should be Denied. (Motion Parts C, E, F, G, H)

Nsahlai argues several points:  Litigation Privilege (Part C); Truth (D); Opinion (E); Limited Public Figure (G); and No Publication (H). Most of these arguments are affirmative defenses for which Nsahlai bears the burden of proof, but relies on inadmissible extrinsic evidence.

### a.    The Defense of the Litigation Privilege (Part C) Must be Denied as Civil Code §47(b)(5) no longer provides for that privilege.

The litigation privilege for making false reports is now excluded as a privilege under Civ Code § 47(b)(5).  Nsahlai argues that his "…statements were true…".  The issue of truth (see *infra*), is ultimately a factual question for the jury. Unless Nsahlai has documents that are judicially noticeable that Tapang has been adjudicated a "terrorist" or found guilty of terrorism (which do not exist) then his

---

[5] This is based on *Bell Atlantic Corp et al. v. Twombly et al.* (2007) 550 U.S. 544 (2007) and *Ashcroft v. Iqbal* (2009) 556 U.S. 662.

**OPPOSITION TO MOTION TO DISMISS**                                              **Page 10**

asserton of "truth" of foreclosed by the amendment to the statute which makes his statements a false report.

**b.  The Defense of Truth (Part D) and Opinion (Part F) is a Triable Issue of Fact Not Subject to Adjudication at the Motion to Dismiss Stage**

Nsahlai raises Truth and Opinion as an absolute defense to his statements. Both "Truth" and "Opinion" presupposes factual matters that are not subject to adjudication by a FRCP 12(b)(6) motion and potentially not even on summary judgment.  See *Schrader Cellars, LLC v. Roach*  (9th Cir. 2025) 129 F.4th 1115, 1121.  While *Shrader* is not a 12(b)(6) case, it addresses the foreclosure of triable issues of fact at summary judgment when instructing the jury leading to reversal.

**c.  Limited Public Figure (Part G) is a triable issue of fact**

The issue of whether Tapang is a private figure, a limited public figure, or a public figure is inherently a factual issue. See *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc*. (C.D. Cal. 1999) 66 F.Supp.2d 1117, 1123, determining the status of the plaintiff based on a factual review. See also, *Overstock.Com, Inc. v. Gradient Analytics* (Cal. App. 2007) 151 Cal.App.4th 68, 77 "…We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiffs submission as a matter of law…" *Id.*

**d.  The Defense of "No Publication" is a Triable Issue of Fact (Part H)**

The issue of publication was discussed in depth in *Sanchez v. Bezos,* (Cal. App. 2022) 80 Cal.App.5th 750, 761-764.   Unlike in *Sanchez* where the issue was sufficient evidence of publication under the hearsay rule, Tapang has attached

**OPPOSITION TO MOTION TO DISMISS** **Page 11**

Nsahlai's letter to the Complaint as Exhibit 1, which is outside the hearsay rule as it is an admission of party opponent. FRE 802(d)(2).

### IV.    LEAVE TO AMEND SHOULD BE GRANTED IF THE ALLEGATIONS ARE INSUFFICIENT

Tapang should be given leave to amend under the Ninth Circuit's liberal policy before dismissal on the merits. *Van Buskirk v. Cable News Network, Inc.,* (9th Cir. 2002) 284 F.3d 977.

### V.    CONCLUSION

In light of the arguments submitted above, Nsahlai's Motion should be denied in its entirety.

Dated:  May 27, 2025

Law Offices of J. Curtis Edmondson

*/s/ J. Curtis Edmondson*
J. Curtis Edmondson, SBN #236105
Attorney for
Plaintiff Ivo Tanku Tapang

**OPPOSITION TO MOTION TO DISMISS**                                        **Page 12**